### In re CHAVEZ et al.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1906. On Rehearing, December 26, 1906.)

#### No. 64.

1. TERRITORIES—TERRITORY ACQUIRED BY CESSION LAW GOVERNING PROPERTY RIGHTS.

In a territory acquired by conquest or cession the laws affecting personal property rights and domestic relations as they existed between the people under the government from which the territory was acquired remain in full force until altered by the government of the United States or by the territorial government under its authority.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Territories, §§ 5, 6; vol. 29, International Law, § 9.]

2. BANKRUPTCY—PRIORITY OF DEBTS—COMMUNITY PROPERTY.

By the civil law which is in force in New Mexico, except as changed by statute, community property acquired by either husband or wife during the marriage, whether by purchase or their individual or joint labor, is held by them as partners, being primarily a fund for the payment of community debts, and on the bankruptcy of a husband having only a community estate, the claims of an antenuptial creditor must be postponed until those of community creditors are satisfied in full.

3. STATUTES—REPEAL OF EXISTING LAW—EFFECT.

Acts New Mexico March 20, 1901 (Sess. Laws 1901, p. 112), conceding that its purpose was to abolish the rule of community property can have no retroactive effect to disestablish rights which had already attached to community property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 346.]

On Petition for Review.

Summers Burkhart (Frank H. Moore and Neill B. Field, on the brief), for petitioners.

R. W. D. Bryan for respondent Frederick H. Jung.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. In the course of administration of the estate of Bernhard Myer, in bankruptcy, a controversy arose before the referee as to the priorities of certain creditors in the distribution of the assets. The order made thereon by the referee was certified to the District Court of the Second Judicial District of New Mexico for review. As question is only made on the petition to this court to review the action of the District Court in recognizing the claim of Frederick H. Jung to share pro rata with the other claims allowed by the District Court, the question to be decided here is, was the claim of said Jung thus properly classified? His claim grew out of a note given by said Myer, of date November 24, 1870, executed to one Nathan Myer, of which said Jung presumably became the owner by assignment. He reduced this note to judgment on the 30th day of October, 1900, in the Supreme Court of San Francisco, California; and on the 27th day of October, 1903, he obtained judgment on said judgment in the district court of Bernalillo county, N. M. in the sum of $9,216.94.

Bernhard and Pauline Myer were married in 1872. At and subsequent to the time of this marriage the husband received from the mother of said Pauline $1,970 as her dot under the civil law then in force in said territory. This money was squandered and lost by the husband. Thereafter property, consisting of certain lands constituting the estate in bankruptcy, was acquired by the husband, mainly in payment of his services as agent in the prosecution of some Indian depredation claims. The deed to this property was made absolutely to the wife, Pauline, possibly in recognition by the husband of his obligation growing out of the loss of the property coming as aforesaid to the marital community estate. The other debts allowed by the District Court against the estate were contracted by said Bernhard Myer during the coverture. The court also allowed in favor of the wife, Pauline, the amount of property which the husband had received through the marriage as aforesaid, to be paid pro rata with the other allowed claims. She joined in the request preferred by the petition to the referee for the sale of said real estate so held by her, the proceeds of which constitute the fund in question for distribution, which is insufficient to pay all the debts of the bankrupt. Presumably she did this under the assumption that this land was the community property of the husband and wife, and that she would be entitled to have her claim to the wife's dot allowed against the fund. Be this as it may, as the claim so allowed her is not challenged by this petition, it is not the subject of review. The petition before this court is prosecuted by certain of the general creditors against the action of the District Court in allowing Jung's claim to share pro rata with them. The contention of petitioners is that all the property which came to either the husband or wife during coverture by onerous title, that is aided by a valuable consideration, as the payment of money, the rendition of services, and the like, by either spouse, became the community property of the spouses as recognized by the civil law, claimed to be in force in the territory at the time in question; and that inhering in this property right is the further rule that the creditors of the hus-

band who became such during the coverture are entitled to be paid first out of said asset.

The only limitation placed upon the territorial government of New Mexico by the act of Congress organizing the territory approved September 9, 1850, 9 Stat. pp. 446, 452, c. 49, is found in section 17, which declares:

"That the Constitution, and all laws of the United States which are not locally inapplicable, shall have the same force and effect within the said territory of New Mexico as elsewhere within the United States."

As neither the Constitution nor any law of the United States affects this matter, it is necessarily remitted to the local laws and customs of the territory, as these may be expressed in acts of legislation or the decisions of the highest court of the territory. It is a recognized canon of international law that in the acquisition of territory, by conquest or cession, the jurisprudence, not political but municipal in character, affecting personal property rights and domestic relations, as they existed between the people under the government from which the territory was carved, remain in full force until altered by the government of the United States. While their allegiance and relation to the former sovereign are dissolved by the acquisition, their relations to each other and their rights of property and obligations remain intact. Insurance Company v. Canter, 1 Pet. 544, 7 L. Ed. 242; United States v. Percheman, 7 Pet. 82, 8 L. Ed. 604; Mitchel v. United States, 9 Pet. 729, 9 L. Ed. 283; Chicago & Pacific Railway Company v. McGlinn, 114 U. S. 546, 5 Sup. Ct. 1005, 29 L. Ed. 270.

In Kearney's Code, p. 82, § 1, adopted September 22, 1846, by the territorial Legislature of New Mexico, it was provided that:

"All laws heretofore in force in this territory, which are not repugnant to or inconsistent with the Constitution of the United States, and the laws thereof, or the statute laws in force for the time being, shall be the rule of action and decision in this Territory."

This fundamental enactment has been carried forward and repeated in the Compiled Laws of 1865, p. 512, c. 72 (Act July 14, 1851, pamph. 176, § 1). And the only changes found in subsequent acts pertain rather to the laws of descent and distribution and the rights of married women, which do not touch the question under consideration.

That the civil law as it existed in Spain and Mexico at the time of the treaty of Guadaloupe-Hidalgo was in force in the territory of New Mexico cannot be questioned. It has been repeatedly recognized in the decisions of the Supreme Court of the territory as late as 1901. By that law the community interest of the husband and wife is likened to a partnership in all property acquired by either during the marriage, whether by purchase or their individual or joint labor and industry. Schmidt's Civil Law of Spain & Mexico, c. 4, p. 12; Ballinger on Community Property, §§ 5, 15, 16, 17, 18, 19. In the earliest case decided by the Supreme Court of New Mexico, Chavez v. McKnight, 1 N. M. 153, it is said:

"By the civil law, which is recognized and established by legislative enactment as the rule of practice in this territory, in all civil cases the wife acquires a tacit lien or mortgage upon the property of her husband to the

amount of the dotal property of which he became possessed through her. The recognition of this principle and the maintenance of the right of married women to such an 'hipotecacion' runs through all the elementary authorities on the civil law. * * * Her mortgage arising out of her paraphernal and dotal rights stands upon the same footing as regards recording the evidence of them; her legal mortgage attaches in both cases without being recorded."

In Barnett v. Barnett, 9 N. M. 205, 213, 50 Pac. 337, 339, the court, discussing a cognate question, after reviewing certain statutes, not affecting the question here involved, said:

"That any change of the Spanish law as to the acquest property under the foregoing status has been made cannot be seriously pretended; and that the foregoing authorities decisively establish that, in such contingency, the law upon the subject in operation at the date of the cession of the territory must prevail, should be unhesitatingly admitted. 'Under the Spanish and Mexican law, property acquired by the husband and wife during the marriage, and whilst living together, whether by onerous or lucrative title, and that acquired by either of them by onerous title, belongs to the community.'"

In Brown v. Lockhart et al. (N. M.) 71 Pac. 1086, 1088, decided by the Supreme Court of New Mexico, February 26, 1903, it is again ruled that:

"The law creates a presumption that property acquired during coverture is community property, and is subject to the payment of community debts."

The right of the wife as holding a tacit lien for the restitution of her dotal property is recognized as late as 1905 by the Supreme Court of the Territory in Ilfeld v. De Baca et al. (N. M.) 79 Pac. 725. Growing out of this doctrine is the result that "the gains being common, the debts which are contracted during marriage are to be paid out of the community property, but not those contracted before marriage or after its dissolution." L. 14, tit. 20, lib. 3, Fuero Real; 1 White's Recep. 63; Ballinger on Community Property, § 120, says:

"The entire community estate when clearly ascertained must be regarded as a primary fund for the discharge and satisfaction of the community debts. This was the rule in Spain and the rule under all laws where the community doctrine is recognized. The private property of each party to the marital union must, as a general rule, bear its own charges and expenses and they should not fall upon the community. This does not mean that the community property is liable for the community debts solely, but that it should be retained for the satisfaction of such debts as are a proper charge against it, instead of being absorbed by the private debts of the spouses to the detriment of the community creditors."

In Packard v. Arellanes, 17 Cal. 525, 537, it is said:

"The relation of husband and wife is regarded by the civil law as a species of partnership, the property of which, like that of any other partnership, is primarily liable for the payment of its debts. 'The law,' says Schmidt, in his work on the civil law of Spain and Mexico, 'recognizes a partnership between the husband and wife as to the property acquired during marriage.' * * * It is the well settled rule of that law that the debts of the partnership have priority of claim to satisfaction out of the community estate."

See, also, Jones v. Jones, 15 Tex. 143.

In Strong v. Eakin, 11 N. M. 113, 114, 66 Pac. 540, 541, it is again said:

"In the case of Barnett v. Barnett, decided by this court October 7, 1897, the court held that where the spouses are both alive the law in relation to

their community property has not been changed by statute in this territory. "That any change of the Spanish law as to acquest property under the foregoing status, has been made, cannot be seriously pretended; and that the foregoing authorities decisively establish that in such contingency, the law upon the subject in operation at the date of the cession of the territory must prevail, should be unhesitatingly admitted.'"

It may be conceded that community property is subject to the payment of antenuptial as well as community debts of the husband. But we do not find that it has been so ruled in a controversy between the community and an antenuptial creditor where there was not sufficient property to first satisfy the claims of the former. It may also be conceded, for the purposes of this case, that the husband during the coverture is entitled to the dominion over and the control of the community property, and that the interest of the wife therein may be inchoate as distinguished from a vested interest during the coverture. But this does not control the question here involved as to the priority of the community creditors as to the community property.

Contention is made that later legislative acts of the territory have eliminated or modified the foregoing rules. In Strong v. Eakin, 11 N. M. 122, 66 Pac. 539, decided October, 1901, the Supreme Court reviewed the antecedent legislation of the territory, including the married woman's act, and the statute pertaining more especially to descents and distributions, and controverted the proposition that these statutes had done away with the rule of community except as they furnished a rule for determining their devise, descent, and distribution. The court said that those statutes "do not positively or by implication affect, during the lives of husband and wife, the acquest property, or direct its disposition until the death of the other." The court further said that while the married woman's act made the wife practically a feme sole, "she cannot withdraw community property accumulated by the joint enterprise of both during the existence of the marriage community from its liability for legitimate community debts, and so long as the law of community property remains in force, although modified, the reason exists for the presumption raised by the civil law, imposing the onus upon the claimant of a separate estate."

On March 20, 1901 (Sess. Laws N. M. 1901, p. 112, c. 62) the Legislature passed the last act pertaining to this question. Section 1 is as follows:

"All property acquired in any manner by either husband or wife, before or during marriage, shall be his or her separate estate, and shall be liable for his or her separate legal contracts, debts and torts."

Section 2 defines the meaning of the term "lucrative title" and "onerous title."

Section 5 declares that:

"All married persons shall possess the same property rights, the same power to convey or contract, the same power to sue and be sued, and all other powers and rights possessed and enjoyed by single and unmarried persons of legal age and otherwise competent to contract, subject to the limitations in the next following section."

It must be conceded that while some of the language of this statute is somewhat involved and obscure, it is difficult, in the light of the

antecedent prevalence of the community doctrine touching property acquired during coverture, to maintain that it was not the purpose of this act to put an end to it. Conceding this to be the purpose, it would be prospective only in its operation. It could have no retroactive effect so as to affect the established status of such property existing at the time of the passage of the act. It could not disestablish rights which had already attached to the community property. This is elementary.

The bankrupt act in no wise destroys or impairs equitable rights among creditors to the estate which existed four months prior to the filing of the petition in bankruptcy. It only seeks to prevent the obtaining of preferences among creditors by forbidding specified acts within the prescribed period. It recognizes the rights of parties secured to them by the existing local laws which are not interdicted or proscribed.

It results that the District Court of New Mexico erred in admitting the claim of Frederick H. Jung to be paid pro rata with the other claims allowed against the estate. Therefore, so much of its order and decree as directed the claim of said Jung to be paid pro rata with the other creditors in the dividends of the estate, is vacated and set aside and this cause is remanded to the said District Court with directions to enter its order or decree allowing the claim of said Jung, but postponing the payment of any dividends thereon until the satisfaction of the other claims of creditors allowed by the order and decree of the District Court against the estate.

## On Rehearing.

The motion for rehearing is filed alone by Frederick H. Jung. Especial criticism is made of the statement contained in the opinion of the court heretofore filed herein, to the effect that as question is made on the petition for review only as to the action of the District Court in recognizing the claim of Jung to share pro rata with the other claims allowed by the District Court, the question to be decided here is, was the claim of said Jung thus properly classified? It perhaps would have been more exact had the writer of the opinion said that as counsel for petitioners for review, in his oral argument to the Court, stated that he did not insist upon the objection to the classification made by the District Court of the claim of Mrs. Pauline W. Myer, it need not be considered by the court. Such was the fact; and it may be added that this concession by said counsel was unavoidable as the logical result of the position he took respecting the rights of the wife under the civil law, which he contended prevailed in New Mexico. He has acquiesced in the action of the court in leaving the claim of Mrs. Myer where the District Court placed it. What right has the claimant, Jung, to complain of this action? He has no standing on the record before this court to be heard respecting the allowance of Mrs. Myer's claim. The District Court, on reviewing the findings of the referee, adjudged that Mrs. Myer's claim should be allowed to share pro rata with all the other claims allowed by it against the estate. Jung took no exception to this action, and presented no petition to this court to have it reviewed. He, therefore, acquiesced in the allowance of her claim. His position before this court was simply one of antagonism

to the effort of the petitioning creditors to have his claim entirely postponed until the satisfaction of the other claims allowed by the District Court. He has been in no position before this court to complain of the action of counsel for the petitioning creditors in abandoning, on argument, any objection to the allowance of Mrs. Myer's claim, or of the action of this court in leaving it where the judgment of the District Court placed it. Likewise is the claimant, Jung, in no position to contend, in the motion for rehearing, that Mrs. Myer should be held to be estopped from asserting an equal participation with the community creditors in the distribution of the fund arising from the sale of the land deeded to her, on the ground that she consented, before the referee, to the sale of the land, and to be postponed in sharing in the proceeds to the claims of the community creditors. The District Court permitted her to amend her claim so as to assert an equal right with said community creditors in said fund. The record does not disclose that counsel for Mr. Jung made any objection to this action of the District Court, and he has never sought any review thereof. Evidently he was perfectly content that she should share equally in the bounty of the fund so long as he was permitted to sit at the table of distribution. So far as he is concerned her claim has passed into irrevocable judgment. Therefore, the maxim might well be applied to his contention: Rixatur de lana a caprina. The contention made in the brief of counsel on behalf of Jung, presented on the original hearing, is not reinforced by any new authority or argument to persuade us that we ought to recede from the conclusion reached on the merits.

The petition for a rehearing is, therefore, denied.