STEELE v. HALLIGAN.

(District Court, W. D. Washington, S. D. February 7, 1916.)

No. 1938.

1. REMOVAL OF CAUSES ☞19—CAUSES REMOVABLE—CAUSES ARISING UNDER LAWS OF UNITED STATES.

Act March 3, 1891, c. 529, § 2, 26 Stat. 839 (Comp. St. 1913, § 10553), makes an appropriation for the fitting of workshops for the employment of prisoners, and provides that convicts shall be employed exclusively in the manufacture of supplies for the government, and shall not be worked outside the prison inclosure. Section 4 (section 10555) provides that the control of prisons is vested in the Attorney General, who shall have power to appoint a warden and other officers. *Held*, that an action by a prisoner in a United States penitentiary against the warden for negligently putting him to work beneath a bank of loose earth, which fell upon and injured him, was one arising under the laws of the United States, and removable to a federal court, where the accident and the injury occurred within the limits of the penitentiary and on land used exclusively for such penitentiary.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53; Dec. Dig. ☞19.]

2. REMOVAL OF CAUSES ☞19—CAUSES REMOVABLE—CAUSES ARISING UNDER LAWS OF UNITED STATES.

Const. U. S. art. 1, § 8, subsec. 17, provides that Congress shall have power to exercise exclusive legislation over all places purchased by the consent of the Legislature of the state in which they shall be for the erection of needful buildings. Const. Wash. art. 25, provides that the consent of the state is thereby given to the exercise by Congress of exclusive legislation over land held for needful buildings, and that civil process issued under the authority of the state may be served and executed thereon. Rem. & Bal. Code Wash. § 6853, gives the consent of the state to the acquisition of property for needful buildings, etc., and cedes jurisdiction over it, and provides as to the service of process. *Held* that, while municipal laws regulating private rights will, if not in conflict with the law of the new sovereignty or the purpose for which the land is acquired, be in force in territory ceded to the United States by a state until changed by the United States, the laws of the state, upon such cession, become laws of the new sovereignty, and the laws of negligence in force in territory in Washington acquired for a United States penitentiary were laws of the United States, so that an action for negligence was removable to a federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53; Dec. Dig. ☞19.]

3. UNITED STATES ☞3—ACQUISITION OF LAND FOR PUBLIC PURPOSES—PRESUMPTIONS.

As cession of jurisdiction by a state to the United States over land for a United States penitentiary was for the benefit of the state and the nation, it will be presumed that the government made a record of the

land acquired by it in the land records of the state, as required by the law of the state authorizing it to acquire such land.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

4. UNITED STATES ☞3—UNITED STATES COURTS—TERRITORIAL JURISDICTION— FOLLOWING POLITICAL BRANCH OF GOVERNMENT.

Where the executive department of the government had long been imprisoning offenders against the federal laws in a penitentiary on land acquired by the United States within a state, and the expense had for years been defrayed by appropriations regularly made by Congress, the judicial branch of the government will follow the political branch and hold its jurisdiction to cover the whole tract.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

5. UNITED STATES ☞3—AUTHORITY OVER PLACES ACQUIRED WITHIN THE STATES FOR PUBLIC PURPOSES.

The federal jurisdiction resulting from the cession by a state of jurisdiction over land acquired by the government, under Const. art. 1, § 8, subsec. 17, is exclusive of state authority and completely ousts the state's jurisdiction; a provision in the act of cession as to service of process, not retaining a concurrent jurisdiction, but merely being intended to prevent the lands becoming a sanctuary for fugitives from justice.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

6. UNITED STATES ☞3—AUTHORITY OVER PLACES ACQUIRED WITHIN THE STATES FOR PUBLIC PURPOSES.

Legislative cession of jurisdiction to the United States over land acquired for governmental purposes after the purchase thereof has the same effect as if made before purchase.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

7. UNITED STATES ☞3—AUTHORITY OVER PLACES ACQUIRED WITHIN THE STATES FOR PUBLIC PURPOSES.

The cession by a state of jurisdiction over land acquired by the United States for governmental purposes includes judicial as well as legislative jurisdiction.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

8. UNITED STATES ☞3—STATUTORY PROVISIONS—ADOPTION OF STATUTES OF ANOTHER JURISDICTION.

Rev. St. § 5391, as re-enacted in 1898 (Act July 7, 1898, c. 576, § 2, 30 Stat. 717 [Comp. St. 1913, § 10462]), provides that, if any offense be committed in any place ceded to and under the jurisdiction of the United States, which offense is not prohibited, or the punishment for which is not specially provided, by any law of the United States, such offense shall receive the same punishment as the laws of the state "now in force" provide for the like offense when committed within the jurisdiction of such state. Held, that this only applies to state laws in effect at the time of the enactment of the act of 1898.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

9. UNITED STATES ☞3—AUTHORITY OVER PLACES ACQUIRED WITHIN THE STATES FOR PUBLIC PURPOSES.

The municipal law of a state regulating civil rights, which is continued in effect after the cession of land by the state to the United States, is the law in effect at the time of the cession.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 3; Dec. Dig. ☞3.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. REMOVAL OF CAUSES ☞25—SHOWING RIGHT TO REMOVE—BURDEN.**

The rule that, before a cause is removable, plaintiff's statement of his own cause of action must show that it is based on the laws or Constitution of the United States, is not applicable to laws depending for their effect upon the territorial jurisdiction, as in the case of reservations, or sites purchased for federal purposes and uses, and in such cases, the federal jurisdiction being general and that of the state exceptional, the state's jurisdiction, rather than that of the federal courts, is to be specially shown.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. ☞25.]

At Law. Action by John H. Steele against O. P. Halligan. On motion to remand. Motion denied.

Griffin & Griffin, of Seattle, Wash., for plaintiff.

George P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for defendant.

CUSHMAN, District Judge. [1] Plaintiff moves that the cause be remanded to the state court. By the complaint he seeks to recover damages in excess of $3,000 for defendant's alleged negligence, and states as a cause of action:

"That at all times hereinafter named the plaintiff was a prisoner confined in the United States penitentiary at McNeil's Island, and that the defendant, O. P. Halligan, at all times hereinafter named was the warden of the United States penitentiary at McNeil's Island, in charge of the inmates and of the maintenance and control of all of the inmates confined therein, including the plaintiff, John H. Steele.

"That * * * the plaintiff was negligently and carelessly placed to work, by and through the direction of the defendant, beneath a steep bank of from 25 to 30 feet in height of sliding loose strata of sand, gravel, and earth, and * * * without any fault or negligence of the plaintiff, the said bank under which the plaintiff was working caved, gave way, and fell upon the plaintiff, greatly injuring and damaging the plaintiff. * * *

"That all of the injuries and damages sustained by the plaintiff were wholly caused by and due to the negligent careless acts and omissions of the defendant in negligently and carelessly placing the plaintiff to work under guard and underneath a bank of loose sliding clay, gravel, and earth."

The petition for removal to this court alleges:

"That the alleged accident and injury to plaintiff, as described in his complaint, occurred at the United States penitentiary, within the limits of the same, and on land and property used exclusively for a United States penitentiary, and exclusively within the jurisdiction of the United States and of the United States courts."

It clearly appears from the complaint that the defendant, the warden, is charged with negligently discharging the duty imposed upon him by law and the judgment of the court committing the plaintiff to his care and custody. It would appear to need no citation of authority to show that such suit is one arising under the laws of the United States. Bachrack v. Norton, 132 U. S. 337, 10 Sup. Ct. 106, 33 L. Ed. 377; Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984; Sonnentheil v. Moerlein Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492; Bryant Bros. Co. v. Robinson, 149 Fed.

321, 79 C. C. A. 259; In re Dunn, 212 U. S. 374, 29 Sup. Ct. 299, 53 L. Ed. 558; Pacific R. R. Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; Cosmos Exploration Co. v. Gray Eagle Iron Co., 190 U. S. 301, 23 Sup. Ct. 692, 47 L. Ed. 1064. The acts of Congress affecting federal prisons are set out in volume 6, Federal Statutes Annotated, pages 23 to 47. Sections 2 and 4 of the act of March 3, 1891 (26 Stat. at Large, 839, c. 529), provide:

"That the sum of one hundred thousand dollars is further appropriated, to be expended under the direction of the Attorney General, in the fitting of workshops for the employment of the prisoners: Provided, however, that the convicts be employed exclusively in the manufacture of such supplies for the government as can be manufactured without the use of machinery, and the prisoners shall not be worked outside the prison inclosure. * * *

"That the control and management of said prisons be vested in the Attorney General, who shall have power to appoint a superintendent, assistant superintendent, warden, keeper, and all other officers necessary for the safe-keeping, care, protection, and discipline of such United States prisoners. He shall also have authority to promulgate such rules for the government of the officials of said prisons and prisoners as he may deem proper and necessary." Vol. 6, Fed. St. Ann. p. 25, Comp. St. 1913, §§ 10553, 10555.

[2] Counsel for plaintiff contends that, while the cause may be affected by laws of the United States, it is controlled, and therefore arises, under the municipal law—the general law of negligence, and does not arise under the laws of the United States, as required by chapter 2, section 24, of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. 1913, § 991]). Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; Starin v. N. Y., 115 U. S. 248, 6 Sup. Ct. 28, 29 L. Ed. 388; Wichita Nat. Bank v. Smith, 72 Fed. 568, 19 C. C. A. 42; McFadden v. Robinson (C. C.) 22 Fed. 10; Foster Fed. Prac. (4th Ed.) vol. 1, § 17, pp. 116 and 147. It is necessary to consider whether this assumption is correct and leads to a different conclusion than that already indicated.

The Constitution of the United States (article 1, section 8, subsection 17) provides:

"The Congress shall have power: * * * To exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."

The Constitution of the state of Washington, adopted October 1, 1889, provides:

"The consent of the state of Washington is hereby given to the exercise by the Congress of the United States of exclusive legislation in all cases whatsoever over such tract or parcels of land as are now held or reserved by the government of the United States for the purpose of erecting or maintaining thereon forts, magazines, arsenals, dockyards, lighthouses, and other needful buildings, in accordance with the provisions of the seventeenth paragraph of the eighth section of the first article of the Constitution of the United States: Provided, that a sufficient description by metes and bounds, and an accurate plat or map of each such tract or parcel of land be filed in the proper office of record in the county in which the same is situated, together with copies of

the orders, deeds, patents, or other evidences in writing of the title of the United States: And provided, that all civil process issued from the courts of this state, and such criminal process as may issue under the authority of this state, against any person charged with crime in cases arising outside of such reservations, may be served and executed thereon in the same mode and manner and by the same officers as if the consent herein given had not been made." Article 25.

Section 6853 of Remington & Ballinger's Code provides:

"The consent of the state of Washington be and the same is hereby given to the acquisition by purchase or by condemnation, under the laws of this state relating to the appropriation of private property to public uses, by the United States of America, or under the authority of the same, of any tract, piece, or parcel of land, from any individual or individuals, bodies politic or corporate, within the boundaries or limits of this state, for the sites of locks, dams, piers, breakwaters, keepers' dwellings, and other necessary structures and purposes required in the improvement of the rivers and harbors of this state, or bordering thereon, or for the sites of forts, magazines, arsenals, docks, navy yards, naval stations, or other needful buildings authorized by any act of Congress, and all deeds, conveyances of title papers for the same shall be recorded as in other cases, upon the land records of the county in which the land so acquired may lie, and in like manner may be recorded a sufficient, description by metes and bounds, courses and distances, of any tract or tracts, legal divisions or subdivisions of any public land belonging to the United States which may be set apart by the general government for any or either of the purposes before mentioned by an order, patent, or other official document or papers describing such land; the consent herein and hereby given being in accordance with the seventeenth clause of the eighth section of the first article of the Constitution of the United States, and with the acts of Congress in such cases made and provided; and the jurisdiction of this state is hereby ceded to the United States of America over all such land or lands as may have been or may be hereafter acquired by purchase or by condemnation, or set apart by the general government for any or either of the purposes before mentioned: Provided, that this state shall retain a concurrent jurisdiction with the United States in and over all tracts so acquired or set apart as aforesaid, so far as that all civil and criminal process that may issue under the authority of this state against any person or persons charged with crimes committed, or for any cause of action or suit accruing *without the bounds of any such tract*, may be executed therein, in the same manner and with like effect as though this assent and cession had not been granted."

[3] Whether the state has any power to impose, as a condition subsequent, the obligation upon the United States of making a record of the land acquired in an office of the state, it is not necessary to decide, as it will be presumed that such record was made, the cession being for the benefit of the state and the nation. Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525 at 528, 5 Sup. Ct. 995, 29 L. Ed. 264. The original prison site was purchased and the prison erected while the state of Washington was still a territory, in pursuance of Act Jan. 22, 1867, c. 9, 14 Stat. at L. 377. After the state of Washington was admitted, additional land was acquired and buildings were erected pursuant to Act March 3, 1903, c. 1007, 32 Stat. at L. 1144.

[4] The executive is and has long been carrying into effect the process of the courts, by imprisoning offenders against the federal laws in this prison, the expense of which has, for many years, been defrayed by appropriations regularly made by Congress. The judicial branch of the government will follow the political and hold its jurisdiction to cover the whole tract, as its character and the purpose of its occupa-

tion are fixed by congressional act. Benson v. U. S., 146 U. S. 325, at 331, 13 Sup. Ct. 60, 36 L. Ed. 991. The complaint avers that the defendant negligently put the plaintiff to work under guard, and the petition for removal alleges:

"That the alleged accident and injury to plaintiff as described in his complaint occurred at the United States penitentiary within the limits of the same and on land and property used exclusively for a United States penitentiary and exclusively within the jurisdiction of the United States and of the United States courts."

The foregoing shows that the act of the defendant, on account of which he is sued, is one directly imposed on him in the course of carrying out the governmental purpose for which the land was purchased as a prison site. It is strongly indicated in both Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264, and Chicago & P. R. R. Co. v. McGlinn, 114 U. S. 542, 5 Sup. Ct. 1005, 29 L. Ed. 270, that in such matters the state's cession of jurisdiction is not necessary; that, in matters concerning the performance of a federal function, exclusive jurisdiction is in the national government without any cession or special consent on the part of the state. In the McGlinn Case it was said:

"This point was involved in the case of Ft. Leavenworth Railroad v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264. We there held that a building on a tract of land owned by the United States used as a fort, or for other public purposes of the federal government, is exempted, as an instrumentality of the government, from any such control or interference by the State as will defeat or embarrass its effective use for those purposes. But, in order that the United States may possess exclusive legislative power over the tract, except as may be necessary to the use of the building thereon as such instrumentality, they must have acquired the tract by purchase, with the consent of the state. This is the only mode prescribed by the federal Constitution for their acquisition of exclusive legislative power over it. When such legislative power is acquired in any other way, as by an express act ceding it, its cession may be accompanied with any conditions not inconsistent with the effective use of the property for the public purposes intended." 114 U. S. 545, 546, 5 Sup. Ct. 1006 [29 L. Ed. 270].

[5] The federal jurisdiction resulting from such cession is exclusive of all state authority.

"This follows from the declaration of the Constitution that Congress shall have 'like authority' over such places as it has over the district which is the seat of government; that is, the power of 'exclusive legislation in all cases whatsoever.' Broader or clearer language could not be used to exclude all other authority than that of Congress, and that no other authority can be exercised over them has been the uniform opinion of federal and state tribunals, and of the Attorneys General." Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, at 532, 5 Sup. Ct. 995, at 999, 29 L. Ed. 264.

The state's jurisdiction is completely ousted. U. S. v. Cornell, Fed. Cas. No. 14,867.

[6] Legislative cession of jurisdiction after purchase has the same effect as if made before purchase. U. S. v. Tucker (C. C.) 122 Fed. 518. The object of this provision (as to service of process, in the act of cession) is not to retain a concurrent jurisdiction, but to prevent the lands held by the United States for governmental purposes becoming a sanctuary for fugitives from justice on account of acts done

within the acknowledged jurisdiction of the state. Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, at 533, 5 Sup. Ct. 995, 29 L. Ed. 264; U. S. v. Cornell, Fed. Cas. No. 14,867. The state and the United States may deal with each other in any way they deem best to carry out the purposes of the Constitution. Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, at 541, 5 Sup. Ct. 995, 29 L. Ed. 264; Benson v. U. S., 146 U. S. 325, at 330, 13 Sup. Ct. 60, 36 L. Ed. 994.

"While Congress has enacted a complete criminal code in relation to crimes committed within places within which it has exclusive jurisdiction and on the high seas, it has provided no laws for the government in civil matters of the inhabitants of forts, arsenals, magazines, and dockyards. These places, when acquired in the manner defined by the clause of the national Constitution just quoted (article 1, § 8) are without laws in civil matters, except such general laws as may have been in force, respectively, in the states from which the United States derived them at the time of acquisition. * * * It [the Supreme Court] held specially that where laws thus left in force after the dates of cession reserved in one case a right of taxing certain property on the lands of the United States, and in the other case the right to recover damages for certain acts of negligence committed on such lands, such provisions of law could be enforced at any time after the cession." Crook, Horner & Co. v. Old Point Comfort Hotel (C. C.) 54 Fed. 604, 607.

[7] The cession by the state includes judicial as well as legislative jurisdiction. In re Ladd (C. C.) 74 Fed. 31. While the criminal laws of the state have been held to have no force after the cession within the territory ceded, unless adopted by legislative enactment of the new sovereignty (In re Ladd [C. C.] 74 Fed. 31, at 40), municipal laws, regulating private rights, will, if not in conflict with the law of the new sovereignty, or the purpose for which the land is acquired, do so, until changed by enactment of the new sovereignty. Chicago & P. R. R. Co. v. McGlinn, 114 U. S. 542, 5 Sup. Ct. 1005, 29 L. Ed. 270.

"With respect to other laws affecting the possession, use, and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity, which are strictly of a municipal character, the rule is general that change of government leaves them in force until, by direct action of the new government, they are altered or repealed." Downes v. Bidwell, 182 U. S. 244, at 298 and 345, 21 Sup. Ct. 770, 45 L. Ed. 1088; Insurance Co. v. Canter, 1 Pet. 511, at 542, 7 L. Ed. 242.

"In a territory acquired by conquest or cession the laws affecting personal property rights and domestic relations as they existed between the people under the government from which the territory was acquired remain in full force until altered by the government of the United States or by the territorial government under its authority." In re Chavez, 149 Fed. 73, 80 C. C. A. 451.

The McGlinn (114 U. S. 542, 5 Sup. Ct. 1005, 29 L. Ed. 270) and Downs (182 U. S. 298, 21 Sup. Ct. 770, 45 L. Ed. 1088) Cases hold that the law under the old sovereignty is preserved in the absence of a controlling federal statute, or its being antagonistic to the purpose for which the governmental site is acquired and used. In Western Union Telegraph Co. v. Chiles, 214 U. S. 274, 29 Sup. Ct. 613, 53 L. Ed. 994, where the state statute imposed a penalty for nondelivery of a telegram, it was held of no effect where the telegram was to be delivered within a United States navy yard; the state having ceded jurisdiction to the United States, although the act penalized was not

strictly a crime. The land in this case was ceded to the United States in 1800. The law providing a penalty was enacted in 1904.

[8] Section 5391, Revised Statutes, was re-enacted in 1898, providing that, when offenses are not specially provided for by any law of the United States, they shall be prosecuted in the courts of the United States and receive the same punishment as provided by the state. The latter act only applies to the state laws in effect at the time of the assimilation crimes act. Franklin v. U. S., 216 U. S. 559, 30 Sup. Ct. 434, 54 L. Ed. 615.

[9] The municipal law of the old sovereignty regulating civil rights, which is continued in effect under the new sovereignty, as pointed out in the cases already cited, is the law in effect at the time of the cession. In re Chavez, 149 Fed. 73, 80 C. C. A. 451. There being two purchases of the land at McNeil Island, one in territorial days and the other after statehood, there would be two dates as of which these laws were adopted and fixed. This fact would involve the determination upon the trial of whether the accident to plaintiff occurred upon the land ceded prior to the admission of the state or subsequently.

"The fact that the state has ceded land in the city of Brooklyn, and political jurisdiction over it, to the United States, for the purpose of a navy yard, does not oust the state courts of jurisdiction as to private rights and remedies within such territory, at least so long as Congress makes no new regulations touching the administration of justice in civil actions arising therein; and therefore the City Court of Brooklyn, by virtue of the jurisdiction conferred on it by Code, § 263, subd. 3, respecting injuries to land within the city, has jurisdiction of an action of trespass committed on a part of such ceded land, which part had been leased by the federal government to the city, under whom plaintiff claims as a sublessee." Barrett v. Palmer, 135 N. Y. 336, 31 N. E. 1017, 17 L. R. A. 720, 31 Am. St. Rep. 835.

The state court being a court of general jurisdiction, it had jurisdiction to entertain this cause. The laws of the old sovereignty remaining in effect and the territory passing to the new sovereignty, they are no longer, so far as that territory is concerned, foreign laws; that is, they are not laws of the old sovereignty, but thereby become laws of the new, pending the enactment by the new sovereignty of appropriate laws on the same subjects. They are fixed as of the time of the cession, while the laws of the old sovereignty change without affecting those in existence at the time of the cession, so far as the new territory passing to the sovereignty is concerned.

It follows, therefore, that the laws of negligence in effect in the territory at the time the first portion of the present site was acquired and those of the state in effect at the time the second portion thereof was acquired became, so far as that territory is concerned, the laws of the United States, and, as modified by the then existing enactments of Congress and those subsequently passed, are the laws under which this case arises.

[10] The rule that, before a cause is removable, plaintiff's statement of his own cause of action must show that it is based on the laws or Constitution of the United States (In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873, and Louisville & Nashville R. R. Co. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126) is applicable rather to provisions of the Constitution and laws in effect throughout the United

States than to laws depending for their effect upon the territorial jurisdiction, as in the case of reservations and sites purchased for federal purposes and uses.

In the first class, the state's jurisdiction is general and the federal jurisdiction exceptional, and therefore to be made specially to appear. But, when the federal jurisdiction originates because of the territory within which the cause of action arose, its jurisdiction is general, and that of the state—so far as it exists—exceptional. The reason upon which the rule is based, then, requires the state's jurisdiction, rather than that of the federal courts, to be specially shown.

Motion to remand denied.