[No. 23657. Department Two. April 6, 1932.]

THE STATE OF WASHINGTON, *on the Relation of The Grays Harbor Construction Company, Plaintiff,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Thomas S. Grant* and *Reynolds, Ballinger, Hutson & Boldt,* for relator.

*The Attorney General* and *Harry Ellsworth Foster, Assistant,* for respondent.

MAIN, J.—This is an original application in this court by which it is sought to prohibit the department of labor and industries from levying and collecting industrial insurance and medical aid premiums upon

[1]Reported in 10 P. (2d) 213.

extrahazardous work under a contract which the relator has with the Federal government.

November 23, 1931, the relator entered into a contract with the United States for the doing of certain highway work in Rainier national park, and had entered upon the performance of the contract. The department of labor and industries levied and assessed industrial insurance and medical aid premiums against the relator, based upon its payroll. The operations under the contract are extrahazardous within the definition of the workmen's compensation act. As first stated, this action is brought to prohibit the department of labor and industries from collecting the premiums mentioned.

The first question is whether industrial insurance and medical aid premiums can be assessed and collected upon a contract with the Federal government for the doing of extrahazardous work. In this connection, the relator contends (a) that the construction of the road is a Federal governmental activity; (b) that the contractor is an instrumentality or agency of the Federal government for the performance of the Federal function; and (c) that the premiums sought to be exacted directly burden the performance of this function and interfere therewith. The relator recognizes that the contentions made cannot be sustained unless this court overrules the case of *Nickell v. Department of Labor and Industries*, 164 Wash. 589, 3 P. (2d) 1005, which we are invited to do.

We have considered the relator's argument and the authorities cited upon the question, but are not disposed to overrule the case mentioned. The opinion in that case was well considered, and represents the deliberate judgment of the court. It was there held that work being performed under a contract with the Federal government upon a highway in a forest reserve,

was subject to the operation of the workmen's compensation act. This was upon the theory that the contractor was not the agent of the Federal government engaged in a Federal governmental activity in the construction of a bridge, but was an independent contractor.

■ The next and principal question is whether the workmen's compensation act of this state is in force within the boundaries of Rainier national park. The right of the Federal government to exercise jurisdiction over the park is derived from Article 1, section 8, clause 17, of the Federal constitution.

In 1899, Congress passed an act which provided that:

"All those certain tracts, pieces or parcels of land lying and being in the State of Washington, and within the boundaries particularly described as follows, to wit: [Describing the boundaries] are dedicated and set apart as a public park, to be known and designated as the Mount Rainier National Park, for the benefit and enjoyment of the people; and all persons who shall locate or settle upon or occupy the same, or any part thereof, except as hereafter provided, shall be considered trespassers and be removed therefrom." U. S. C. A., Title 16, § 91.

Thereafter, and in the year 1901, the legislature of this state passed an act which provided:

"Exclusive jurisdiction shall be, and the same is hereby ceded to the United States over and within all the territory that is now or may hereafter be included in that tract of land in the State of Washington, set aside for the purposes of a National Park, and known as the Rainier National Park; saving, however, to the said state, the right to serve civil or criminal process within the limits of the aforesaid park, in suits or prosecutions for or on account of rights acquired, obligations incurred or crimes committed in said state, but outside of said park; and saving further to the said state the right to tax persons and corporations,

their franchises and property on the lands included in said park: *Provided, however,* This jurisdiction shall not vest until the United States through the proper officer, notifies the Governor of this state that they assume police or military jurisdiction over said park." Laws of 1901, p. 192 (Rem. Comp. Stat., § 8110).

In 1911, the workmen's compensation act of this state was passed, and became effective on October 1st of that year. In 1916, or five years later, the Federal Congress passed an act which provided:

"Sole and exclusive jurisdiction is assumed by the United States over the territory embraced within the Mount Rainier National Park, saving, however, to the State of Washington the right to serve civil or criminal process within the limits of the aforesaid park in suits or prosecution for or on account of rights acquired, obligations incurred, or crimes committed in said State but outside of said park, and saving further to the said State the right to tax persons and corporations, their franchises and property, on the lands included in said park. All the laws applicable to places under the sole and exclusive jurisdiction of the United States shall have force and effect in said park. All fugitives from justice taking refuge in said park shall be subject to the same laws as refugees from justice found in the State of Washington." U. S. C. A., Title 16, § 95.

Thereafter, and in accordance with that act, the secretary of the interior, on July 16, 1916, notified the governor of this state that the United States had accepted jurisdiction over the park area. It will thus be seen that the jurisdiction acquired over the park was by the consent of this state.

In the act of 1901, which is above quoted, it was expressly provided that exclusive jurisdiction was ceded to the United States over and within all the territory that is

" . . . now or may hereafter be included in that tract of land in the State of Washington, set aside for the purposes of a national park, and known as the Rainier National Park."

The act concludes with the proviso that jurisdiction

" . . . shall not vest until the United States through the proper officer, notifies the Governor of this state that they assume police or military jurisdiction over said park."

Prior to the time that the governor of this state was so notified, and in the year 1911, the workmen's compensation act was passed. At that time, the cession of the jurisdiction over the park area to the Federal government had not become effective, and did not become effective until approximately five years later. The Federal jurisdiction over the park area not having become effective when the workmen's compensation act was passed, that act was in force and operative within the boundaries of the park. The workmen's compensation act having been passed before the cession of the jurisdiction over the park area became effective, it remained in force in the ceded territory until displaced by Congress. In *Kaufman v. Hopper,* 220 N. Y. 184, 115 N. E. 470, it was said:

"The common law and statutes passed before the act of cession remain in force in the ceded territory until displaced by Congress (*McCarthy v. Packard Co.,* 105 App. Div. 436; affd. on opinion below 182 N. Y. 555; *Barrett v. Palmer,* 135 N. Y. 336), but later statutes are of no effect. This is now the settled rule (*Farley v. Scherno,* 208 N. Y. 269; *Ft. Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, 537; *W. U. Tel. Co. v. Chiles,* 214 U. S. 274). The rule is different where land has been acquired by the nation without the consent of the state (*Ft. Leavenworth R. R. Co. v. Lowe, supra*)."

As above pointed out, the jurisdiction over the territory within the boundaries of Rainier national

park was acquired by the Federal government through the consent of this state. In *Chicago, Rock Island & Pacific Railway Co. v. McGlinn,* 114 U. S. 542, the precise question now before us was clearly and lucidly discussed, and we shall quote somewhat extensively from the opinion in that case. It was there said:

"It is a general rule of public law, recognized and acted upon by the United States, that whenever political jurisdiction and legislative power over any territory are transferred from one nation or sovereign to another, the municipal laws of the country, that is, laws which are intended for the protection of private rights, continue in force until abrogated or changed by the new government or sovereign. By the cession public property passes from one government to the other, but private property remains as before, and with it those municipal laws which are designed to secure its peaceful use and enjoyment. As a matter of course, all laws, ordinances, and regulations in conflict with the political character, institutions, and constitution of the new government are at once displaced. Thus, upon a cession of political jurisdiction and legislative power—and the latter is involved in the former—to the United States, the laws of the country in support of an established religion, or abridging the freedom of the press, or authorizing cruel and unusual punishments, and the like, would at once cease to be of obligatory force without any declaration to that effect; and the laws of the country on other subjects would necessarily be superseded by existing laws of the new government upon the same matters. But with respect to other laws affecting the possession, use and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity, which are strictly of a municipal character, the rule is general, that a change of government leaves them in force until, by direct action of the new government, they are altered or repealed. *American Insurance Co. v. Canter,* 1 Pet. 542; Halleck, International Law, ch. 34, § 14.

"The counsel for the railroad company does not controvert this general rule in cases of cession of political jurisdiction by one nation to another, but contends that it has no application to a mere cession of jurisdiction over a small piece of territory having no organized government or municipality within its limits; and argues upon the assumption that there was no organized government within the limits of Fort Leavenworth. In this assumption he is mistaken. The government of the State of Kansas extended over the Reservation, and its legislation was operative therein, except so far as the use of the land as an instrumentality of the general government may have excepted it from such legislation. In other respects, the law of the State prevailed. There was a railroad running through it when the State ceded jurisdiction to the United States. The law of the State, making the railroad liable for killing or wounding cattle by its cars and engines where it had no fence to keep such cattle off the road, was as necessary to the safety of cattle after the cession as before, and was no more abrogated by the mere fact of cession than regulations as to the crossing of highways by the railroad cars, and the ringing of bells as a warning to others of their approach.

"It is true there is a wide difference between a cession of political jurisdiction from one nation to another and a cession to the United States by a State of legislative power over a particular tract, for a special purpose of the general government; but the principle which controls as to laws in existence at the time is the same in both. The liability of the railroad company for the killing of the cow did not depend upon the place where the animal was killed, but upon the neglect of the company to enclose the road with a fence which would have prevented the cow from straying upon it. The law of Kansas on the subject, in our opinion, remained in force after the cession, it being in no respect inconsistent with any law of the United States, and never having been changed or abrogated."

The cases of *Ft. Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, *Arlington Hotel Co. v. Fant,* 176 Ark. 613, 4 S. W. (2d) 7, *Divine v. Unaka National Bank,* 125 Tenn. 98, 140 S. W. 747, 39 L. R. A. (N. S.) 586, and *Steele v. Halligan,* 229 Fed. 1011, are to the same effect.

From the authorities cited and the excerpts from two of them quoted, it follows that, the workmen's compensation act having been in force within the territorial boundaries of Rainier national park at the time jurisdiction thereof was ceded to the United States, the act remained in force until Congress passed an act which superseded it. Up to the present time, no act of Congress has been passed which is in any respect inconsistent with the operation of the workmen's compensation act over the park.

The writ will be denied.

TOLMAN, C. J., BEALS, HOLCOMB, and BEELER, JJ., concur.