[Argued June 5, 1893; decided July 17, 1893.]

## COOPER *v.* PHIPPS.

[ S. C. 33 Pac. Rep. 985 ; 22 L. R. A. 836.]

1. LIBEL AND SLANDER— EVIDENCE OF PLAINTIFF'S CHARACTER.— In actions for libel and slander, the good character of the plaintiff cannot be shown until it has been attacked.

2. LIBEL AND SLANDER—PRIVILEGED STATEMENTS OF WITNESSES*— MALICE— BURDEN OF PROOF.— Statements uttered or published by witnesses in the course of judicial proceedings are presumptively privileged, and before a witness can be held liable in a civil action, this presumption must be overcome by showing affirmatively that such statements were not only false and malicious, but that they were not pertinent to the issues, and were not in response to questions asked by counsel.

Jackson County: W. C. HALE, Judge.

This appeal is brought to reverse a judgment for five thousand dollars recovered by Emma Cooper in an action

---

*NOTE.—This case is re-reported in 22 L. R. A. 836, with an excellent review of the authorities on the question of the privilege of witnesses as to defamatory testimony. See also *Hunckel* v. *Voneiff*, 69 Md. 179 ( 9 Am. St. Rep. 413 ), where the authorities supporting the English view of the privilege of witnesses are collated, discussed, and followed. In *Shadden* v. *McElwee*, 86 Tenn. 146 ( 6 Am. St. Rep. 821 ), the American rule is followed. The kindred question of libel by defamatory words in a pleading is fully discussed in a note to the Louisiana case of *Randall* v. *Hamilton*, 45 La. Ann.; S. C. 22 L. R. A. 649.—REPORTER.

for libel against Calista Phipps and her son, Wm. Phipps. It is charged that in a certain suit for divorce and for the custody of a minor child, pending in the superior court for the county of San Francisco, state of California, between the defendant William Phipps, as plaintiff, and Minnie Phipps, a sister of the plaintiff herein, as defendant, Calista Phipps, one of the defendants herein and mother of her co-defendant Wm. Phipps, was called and testified as a witness, and in response to the following interrogatory of counsel, " Has the defendant been in the habit of running around with other men?" answered, "Yes, sir; two young men came and rented a house and she and her sister [meaning this plaintiff], lived with them, and kept house for them; did this about two months; all the neighbors talked about their scandalous conduct;" that this testimony was reduced to writing by the court commissioner, and was duly filed, at the instance of the defendant William Phipps, and became a part of the records and files of said court; that defendant meant by said words to accuse the plaintiff of being an unchaste woman, and of having lived in notorious lewd and lascivious cohabitation with some man to plaintiff unknown; that such statement was false, malicious, and defamatory, and was made with malice, and with the intent to defame the plaintiff, and at the instigation and request of the defendant William Phipps. The answer admits that the defendant Calista Phipps testified as alleged in the divorce suit, but denies the other allegations of the complaint, and affirmatively alleges that such testimony was given with a firm belief in its truth, in answer to an interrogatory propounded to her by counsel, and without malice or ill will toward plaintiff herein, and that such testimony was relevant to the issue involved in said suit. Reversed.

*William M. Colvig*, and *P. P. Prim*, for Appellants.

1. It was error to allow plaintiff to prove that her general reputation for virtue and chastity was good, as

this was done before any attack was made on her reputation. The law presumes the character and public reputation of the plaintiff to be good, and of the best, until it is attacked, and she can safely rest upon that presumption. Without introducing any evidence, her reputation and character stood without qualification or defect, and no evidence that she could offer could add to or increase its force and virtue: *Hitchcock* v. *Moore,* 70 Mich. 112; *Cornwall* v. *Richardson,* Ryan & M. 305; *Matthews* v. *Huntley,* 9 N. H. 146; *Stow* v. *Converse,* 3 Conn. 325 (8 Am. Dec. 189); *Bamfield* v. *Massey,* 1 Campb. 460; *Dodd* v. *Norris,* 3 Campb. 519; *Houghtaling* v. *Kelderhouse,* 2 Barb. 149; Newell, Defamation, Slander and Libel, p. 823; *Gough* v. *St. John,* 16 Wend. 646; *Anderson* v. *Long,* 10 Serg. & R. 55; 1 Wharton, Evidence, 2d Ed. §§ 47–50; *Miles* v. *Vanhorn,* 17 Ind. 245 (79 Am. Dec. 477); *McCabe* v. *Platter,* 6 Blackf. 405; *Howard* v. *Patrick,* 43 Mich. 121; *Fahey* v. *Crotty,* 63 Mich. 383; *Lotto* v. *Davenport,* 50 Minn. 99; *Croasdale* v. *Bright,* 6 Houst. (Del.) 52.

2. Under the allegations of plaintiff's complaint, it is shown therein that Calista Phipps was conditionally privileged when she uttered and published the alleged libel, and the plaintiff could not recover any damages in this case, unless the plaintiff could show by a preponderance of the evidence that Calista Phipps was actuated by actual malice, or malice in fact against plaintiff: *Kent* v. *Bougartz,* 15 R. I. 72. The rule of evidence as to such cases is to impose on the plaintiff the *onus* of rebutting those presumptions flowing from the seeming obligations and situation of the parties, and to require of him to bring home to the defendant the existence of malice that is malice in fact, as the true motive of his conduct: Townshend, Slander and Libel, 4th Ed. § 209, p. 296; *King* v. *Root,* 4 Wend. 113 (21 Am. Dec. 109). Under the pleadings, the plaintiff was not entitled to recover at all, without proving that the words were uttered and published with actual

malice against said plaintiff· *Hastings* v. *Lusk*, 22 Wend.
410 (34 Am. Dec. 330); Townshend, Slander and Libel,
p. 296, § 209; Cooke, Defamation, 28, 31, 60; Newell, Defa-
mation, Slander and Libel, p. 324, § 23; Starkie, Slander
and Libel, 229, 292; see Folkard's Starkie, Slander and
Libel, p. 262, note 6 *Lawson* v. *Hicks*, 38 Ala. 279 (81 Am.
49); *Calkins* v. *Sumner*, 13 Wis. 193 (80 Am. Dec. 738); Dec.
*Faris* v. *Starke*, 9 Dana, 128 (33 Am. Dec. 538), *King* v.
*Root*, 4 Wend. 113 (21 Am. Dec. 109).

3. Said words are not libelous *per se* or upon their face,
because they are ambiguous and uncertain as to their
meaning. But it is alleged in the complaint that she
meant and intended to be understood as meaning by the
use of said words that plaintiff was not a virtuous woman;
that her public reputation for chastity and virtue was bad,
and that plaintiff at some time had been guilty of living
in notorious, lewd, and lascivious cohabitation with some
man to plaintiff unknown. The complaint contains no
averment that the persons to whom it is alleged that the
publication of said words was made, understood the libel-
ous meaning intended to be conveyed by the utterance
and publication of said words as charged in the complaint.
Such an allegation was material and absolutely necessary
in this complaint. The rule is well established that where
the words complained of are not libelous *per se*, on account
of being ambiguous and doubtful as to their meaning,
that it is absolutely essential and necessary to aver in the
complaint that the persons, to whom it is alleged the pub-
lication was made, understood the libelous meaning of
said published words, as intended by the publisher thereof,
and as charged in the complaint; because, if not so un-
derstood by the readers of said publication, no injury
could result to the plaintiff in consequence of the publica-
tion: *Maynard* v. *E. F. Ins. Co.* 34 Cal. 48, and 47 Cal.
207; *Harris* v. *Zanom*, 93 Cal. 59; *Woodsworth* v. *Meadows*,
5 East, 453; *Goodrich* v. *Woolcott*, 6 Cow. 239, *Andrews* v.

*Woodmensee,* 15 Wend. 234; *Gibson* v. *Williams,* 4 Wend. 320, *Glatz* v. *Kleen,* 50 N. W. Rep. 137; *Irebeck* v. *Beerle,* 50 N. W. Rep. 36; *Hunckel* v. *Vonliff,* 14 Atl. Rep. 500; Townshend, Slander and Libel, §§ 108, 96.

*Lionel R. Webster,* and *Francis Fitch,* for Respondent.

1. In slander and libel, charging plaintiff with being unchaste, she may prove on her direct case that her general reputation for chastity and virtue is good: (1) to support the presumption that it is good, (2) cases of slander and libel are exceptions to the general rule forbidding such proof in civil actions, and (3) to enhance damages: 3 Sutherland, Damages, p. 665; 2 Greenleaf, Evidence, § 275; 1 Wharton, Evidence, 3d Ed. §§ 47, 50; 1 Sedgwick, Damages, 8th Ed. § 52, 2 Sedgwick, Damages, 8th Ed. §§ 445, 452; 3 Am. & Eng. Enc. 112, and note; *O'Bryan* v. *O'Bryan,* 13 Mo. 16 (53 Am. Dec. 128); *Williams* v. *Haig,* 3 Rich. L. 362 (45 Am. Dec. 774); *Adams* v. *Lawson,* 17 Gratt, 250 (94 Am. Dec. 455); *Stone* v. *Varney,* 7 Met. 86 (39 Am. Dec. 762). Actual ill will or malice will enhance the damages, but need not be shown to entitle plaintiff to recover: 3 Sutherland, Damages, p. 642; Hill's Code, § 2029.

2. A witness testifying in a court who maliciously defames another with the intent to injure the reputation of such other, or expose him or her to public hatred, contempt, or ridicule, if such testimony is false and its falsity is known by the witness, is not protected from civil action for libel because of the privilege of witness: Townshend, Slander and Libel, § 223; *Shadden* v. *McElwee,* 86 Tenn. 146; *Hutchinson* v. *Lewis,* 75 Ind. 55; 1 Hilliard, Torts, 322; Cooley, Torts, 210; *Nelson* v. *Robe,* 6 Blackf. 204; *Grove* v. *Brandenburg,* 7 Blackf. 234; *Mower* v. *Watson,* 11 Vt. 536 (34 Am. Dec. 704). The American rule modifies that enforced in England: *White* v. *Carroll,* 42 N. Y. 161

(1 Am. Rep. 505); *Smith* v. *Howard*, 28 Iowa, 51; *Barnes* v. *McCrate*, 32 Me. 442.

3. Defendants are presumed to have used the words in the meaning in which they would ordinarily be accepted and understood, under the circumstances and in the connection in which they were used. If under these conditions the words would convey to a person of ordinary understanding the charge of unchastity, such meaning must be accepted: Townshend, Slander and Libel, p. 144, §§ 140, note 1, 144, 282, 384, 391; *Wilcox* v. *Moon*, 63 Vt. 481; 13 Am. & Eng. Enc. Law, 379, 381; *Kedrolivansky* v. *Niebaum*, 70 Cal. 216; *Davis* v. *Sladden*, 17 Or. 259; *Proctor* v. *Owens*, 18 Ind. 21 (81 Am. Dec. 341); *Goodrich* v. *Hooper*, 97 Mass. 1 (93 Am. Dec. 50); *Stallings* v. *Newman*, 26 Ala. 300 (62 Am. Dec. 723); *Little* v. *Barlow*, 26 Ga. 423 (71 Am. Dec. 219).

MR. JUSTICE BEAN delivered the opinion of the court:

1. The first assignment of error necessary for us to consider is that as a part of plaintiff's case in chief, evidence in her behalf was admitted tending to show that her general reputation for virtue and chastity was good. At the time this evidence was offered and admitted, no attack had been made by defendants, either in the pleadings or otherwise, upon the character of the plaintiff; and it was then and there stated by their counsel, in open court, and in the hearing of the jury, that her reputation for virtue and chastity was admitted to be of the best, and that no attack would be made thereon during the trial, nor was any such attack made. There is some conflict in the authorities as to whether, in an action for libel or slander, the plaintiff may give in evidence his good character, without it first having been attacked by the defendant either in the pleadings or evidence. " But the better opinion," says Mr. Wharton, " is against this concession, on the ground that the law presumes a party's character

good, and that it is superfluous for him to prove that which is presumed": Wharton, Evidence, § 47. And again the same author says: "It would be manifestly improper to permit a party suing for damages to put in evidence, as reason why he should have heavy damages, that his character is good because, *first*, the law assumes all characters to be good, and there is no use in proving that which is thus assumed; *secondly*, to· make good character the basis of recovery, would be equivalent to saying that a person with a bad character can be injured with impunity; *thirdly*, a collateral issue would be provoked which would bear hard upon many deserving cases. For these and other reasons the courts have refused to permit such evidence to be put in": *Idem*, § 50. This we think the better doctrine, and the one supported by the weight of authority. The law presumes the plaintiff's character to be good until it is attacked, and she may safely rest upon this presumption, and no evidence that she may offer can add to or increase its force or virtue. See *Hitchcock* v. *Moore*, 70 Mich. 112 (14 Am. St. 474 and note; 37 N. W. 914), and 3 Am. & Eng. Enc. Law, 112, where the authorities are fully collated, and to which reference may be had by any one desiring to pursue the investigation.

2. The next assignment of error is in the instruction to the jury, that "actual ill will or malice will enhance the damages, and may be shown for that purpose, but need not be shown to entitle the plaintiff to recover." This was manifest error under all the authorities. While there is some conflict in the adjudged cases as to whether witnesses are absolutely exempt from liability to an action for defamatory words uttered or published in the course of judicial proceedings, it is agreed by all the authorities that they are presumptively so, and before a witness can be held liable in a civil action, this presumption must be overcome by showing affirmatively that such statements were not only false and malicious, but that they were not

pertinent to the issues, and not in response to questions asked by counsel. It seems to be the settled doctrine of the English courts that statements made by a witness in the course of a judicial investigation are absolutely privileged to that extent that no action for libel or slander will lie therefor: Townshend, Libel and Slander, § 223; *Goffin* v. *Donnelly*, 6 Q. B. Div. 307; *Seaman* v. *Netherclift*, L. R. 2 . C. P. Div. 53; *Dawkins* v. *Rokeby*, L. R. 8 Q. B. 255; S. C. L. R. 7 H. L. 744. In this country, many, and perhaps a majority, of the courts have refused to adopt the absolute and unqualified privilege of a witness, as laid down by the English courts; but it is agreed that a witness is absolutely privileged as to everything said by him having relation or reference to the subject matter of inquiry before the court, or in response to questions asked by counsel, and presumptively so as to all his statements. Some of the cases hold that if he abuse his privilege by making false statements, which he knew to be impertinent and immaterial, and not responsive to questions propounded to him, for the purpose of malicious defamation, he may, upon an affirmative showing to that effect, be held in damages for libel or slander: *Rice* v. *Coolidge*, 121 Mass. 393; *White* v. *Carroll*, 42 N. Y. 161; *Smith* v. *Howard*, 28 Iowa, 51; *Barnes* v. *McCrate*, 32 Me. 442; *Hutchinson* v. *Lewis*, 75 Ind. 55; Cooley, Torts, 211; Newell, Slander and Defamation, 449; *Hoar* v. *Wood*, 3 Metc. 193; *Mower* v. *Watson*, 11 Vt. 536; *Shadden* v. *McElwee*, 86 Tenn. 146 (5 S. W. 602; 6 Am. St. Rep. 821 and note). In Odgers on Libel and Slander, page 191, it is said that "A witness in the box is absolutely privileged in answering all the questions asked him by the counsel on either side; and even if he volunteers an observation (a practice much to be discouraged), still, if it has reference to the matter in issue, or fairly arises out of any question asked him by counsel, though only going to his credit, such observation will also be privileged; but a remark made by a witness in the box,

wholly irrelevant to the matter of inquiry, uncalled for by any question of counsel, and introduced by the witness maliciously, for his own purposes, would not be privileged, and would also probably be a contempt of court." So also in *Hoar* v. *Wood*, 3 Metc. 193, Chief Justice SHAW said: " We take the rule to be well settled by the authorities that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore, if spoken elsewhere, would import malice, and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry. The question, therefore, in such case is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relative and pertinent to the cause or subject of inquiry."

And in *Mower* v. *Watson*, 11 Vt. 536, Mr. Chief Justice REDFIELD, after an extended examination of the authorities, says: "From the foregoing cases the true ground of the privilege is readily deduced. *Prima facie*, the party or his counsel is privileged for everything spoken in court. If any one considers himself aggrieved, in order to sustain an action for slander, he must show that the words spoken were not pertinent to the matter then in progress, and that they were spoken maliciously, and with a view to defame him. So that if the words spoken were pertinent to the matter in hand, the party and counsel may claim full immunity from an action of slander, however malicious might have been his motive in speaking them. So, too, if the words were not pertinent to the matter in issue, yet if the party spoke them *bona fide*, believing them to be pertinent, no action of slander will lie. So that the plaintiff, in order to maintain this action, must prove, first, that the words spoken were not pertinent to the matter then in hand, and, secondly, that they were spoken *bona fide*." So that whether we adopt the rule as prevailing in England,

or as modified by some of the courts of this country, it is apparent that under either view the instruction that proof of actual malice was not necessary to enable the plaintiff to maintain this action was clearly erroneous. The words complained of were spoken by defendant when a witness in a judicial proceeding, in response to an interrogatory of counsel, and, under the rule most favorable to the plaintiff's contention, were presumptively privileged, and before this presumption can be overcome, the plaintiff must show affirmatively that they " were not pertinent to the matter then in progress, and that they were spoken maliciously and with a view to defame her."

We think it unnecessary to notice at this time the other assignments of error, and the judgment of the court below will be REVERSED and a new trial ordered.