## THOMPSON v. STANDARD OIL CO. OF NEW JERSEY et al.

### No. 3496.

Circuit Court of Appeals, Fourth Circuit.

Nov. 18, 1933.

PARKER, Circuit Judge, dissenting.

Samuel M. Wolfe, of Gaffney, S. C. (C. T. Graydon and A. F. Spigner, both of Columbia, S. C., on the brief), for appellant.

George L. Buist, of Charleston, S. C. (Benet, Shand & McGowan, of Columbia, S. C., and Buist & Buist, of Charleston, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action was instituted in the court of common pleas for Richmond county, S. C., by Frank R. Thompson, a citizen of South Carolina, against Standard Oil Company of New Jersey, a Delaware corporation, and J. C. King, also a citizen of South Carolina. Recovery of $50,000 in actual and punitive damages was sought for an alleged libel claimed to have been published by defendants, who were sued as joint tort-feasors. The cause was removed to the District Court for the

Eastern District of South Carolina, and a petition of the plaintiff to remand was denied on the ground that a federal question was presented. Demurrers were then entered and sustained, and the complaint dismissed as to both defendants, but the sole question raised on this appeal relates to the propriety of the refusal of the trial court to remand the cause to the state court.

The complaint alleges that Thompson, who was plaintiff in the action below, had previously brought a suit in the United States District Court for the Western District of South Carolina, against Standard Oil Company, based upon diverse citizenship, for damages for an alleged breach of contract, and copies of the complaint and of the defendant's answer in that suit are appended to and made a part of the complaint in the pending suit. The libel now complained of is contained in the answer in the former suit. The complaint in that action charged in substance that Thompson, the plaintiff, had been for some years in the employ of the Standard Oil Company, and had been given the position of station agent and general salesman at Anderson, S. C., under a contract with the branch manager of the company at Charleston, S. C., wherein it was agreed that Thompson should hold the position at Anderson until his services warranted promotion, in which event he should be given the position of district manager for the company at Greenville, S. C.; that he served diligently and successfully, and subsequently was definitely promised the position at Greenville by the branch manager, as soon as it became vacant; that the branch manager died and J. C. King, one of the defendants in the pending suit, succeeded him, but failed to abide by the contract when the vacancy occurred, and not only appointed another employee to the place, but removed Thompson from Anderson to a less desirable place, whereupon Thompson, being greatly damaged, severed his connection with the company and brought suit for breach of contract against it.

The answer of the company to this com plaint for breach of contract was supported by the affidavit of J. C. King as to the truth of its contents, and denied the execution of the contract as alleged, and charged that the employee, who had been given the place at Greenville, was a man far superior in ability, in integrity, and in character to Thompson, and that Thompson, while in the employ of the company, had entered into a plan with divers persons to form a corporation for the competitive sale of petroleum products and the diversion to it of the salesmen of the company and the trade of its customers; and to that end had secured, in his own name, leases on service stations so framed as to enable him individually to control the sale of petroleum products at such stations and to divert the trade thereof from the products of his employer to the products of a competitor. These allegations of the answer were charged by the complainant in the pending case to be false, and irrelevant to the issue involved, and to have been made by the company and by King jointly with express malice and in utter disregard of the truth; and, as a result, he had been greatly humiliated and damaged in his business reputation and standing.

A short time after the complaint in the present cause was filed, the Standard Oil Company, one of the defendants, filed in the state court a petition for removal on the grounds of diversity of citizenship and separable controversy, and both defendants filed an additional petition for removal on the ground that a federal question was involved. Both petitions were denied by the state court, whereupon the cause was transferred by removal bond and the filing of the record to the District Court of the United States for the Eastern District of South Carolina. A motion to remand was then filed, which was denied by the District Judge upon the ground that the cause was one arising under the Constitution and laws of the United States, in that it involved questions as to the jurisdiction, powers, and functions of a court of the United States, and the rights, duties, and privileges of a litigant therein. The District Judge said:

"The decision in the case will involve the question of the jurisdiction of a court of the United States; the powers and functions of that court; and the rights, duties, and privileges of a litigant therein. If those questions do not arise out of the laws of the United States, then they do not arise out of any laws. All the powers and functions of a federal court arise from federal statutes and the Constitution of the United States, and likewise all the rights, duties, and privileges of a litigant in that court flow from and are protected by the laws of the United States. The mere fact that questions as to those rights and privileges may depend for their solution upon an application of the common law in no way negatives the proposition that the rights and privileges claimed flow from and arise out of the laws and Constitution of the United States." 60 F.(2d) 162, 163.

The situation described very naturally gives rise to the opinion that the power and duty to protect litigants in the exercise of their rights in the courts of the United States should be lodged in those courts, free from

the interference or control of the courts of the states; but the jurisdiction of the inferior federal courts rests entirely upon the acts of Congress, and their provisions must be followed even though the dividing line, which separates cases cognizable in the federal courts from those over which no jurisdiction is given, does not follow an entirely logical course. Particularly is this true of the federal removal statutes found in sections 28 to 39 of the Judicial Code, 28 USCA §§ 71 to 82. Section 28 of the Judicial Code, 28 US CA § 71, provides that "any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States * * * of which the district courts of the United States are given original jurisdiction by this title * * * brought in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district." Prior to the amendments of the law now incorporated in this section from the Judiciary Act of 1887–88 (Act of March 3, 1887, c. 373, § 2, 24 Stat. 552; Act of August 13, 1888, c. 866, 25 Stat. 434), there was no requirement that the case be within the "original jurisdiction" of the District Court, and a federal question was properly raised, if at the time of the removal, the record, including the defendant's petition for removal, showed that either party claimed a right under the Constitution or laws of the United States. Tennessee v. Davis, 100 U. S. 257, 264, 25 L. Ed. 648; New Orleans, M. & T. Railroad v. Mississippi, 102 U. S. 135, 141, 26 L. Ed. 96; Bock v. Perkins, 139 U. S. 628, 11 S. Ct. 677, 35 L. Ed. 314. Since the Judiciary Act of 1887 and 1888, it has been the uniform holding of the Supreme Court that no case may be removed from a state to a federal court on the ground that it arises under the Constitution or laws of the United States, unless it might have been brought originally in a federal court upon that ground under section 24 (1) of the Judicial Code, 28 USCA § 41 (1). Therefore, a case is not now removable unless the plaintiff's declaration or bill shows by distinct averments that his cause of action, as distinguished from the defense thereto, is based upon a right under the Constitution or laws of the United States, or treaties made under their authority. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 S. Ct. 654, 38 L. Ed. 511; Third Street, etc., R. Co. v. Lewis, 173 U. S. 457, 19 S. Ct. 451, 43 L. Ed. 766; Arkansas v. Kansas & Texas Coal Co., 183 U. S. 185, 22 S. Ct. 47, 46 L. Ed. 144; Louisville & N. R. Co. v. Mottley, 211 U. S. 149, 29 S. Ct. 42, 53 L. Ed. 126; In re Winn,

213 U. S. 458, 29 S. Ct. 515, 53 L. Ed. 873; Shulthis v. McDougal, 225 U. S. 561, 569, 32 S. Ct. 704, 56 L. Ed. 1205; American Well Works Co. v. Layne & Bowler Co., 241 U. S. 257, 36 S. Ct. 585, 60 L. Ed. 987.

The result is that oftimes a plaintiff has the choice of bringing his suit in either a state or a federal court when a federal question forms an ingredient of his case, whereas a defendant may be limited to the state court without the right of removal although his defense involves such a question. This anomaly was well characterized by the late Judge Rose, formerly a member of this court, in his work on "Federal Jurisdiction and Procedure" (4th Ed.) § 380, where he said:

"To say, as does the statute, that a suit which could originally be brought may be removed is easy—far easier, perhaps, than it would be in any other way, to describe cases which Congress is willing to have removed from the state to the federal courts. Nevertheless, such simple form of statement has its disadvantages. It makes irremovable cases which it is impossible to distinguish for any practical reason from some of those which are removable. For example, if a plaintiff may bring his case into the Federal Court because it rests upon a claim or right under the Constitution, laws or treaties of the United States, why should not a defendant, who bases his defenses on rights given him by the same enactments, be equally entitled to have that case tried out in the Federal Court? There is no answer except that Congress has not allowed him to do so."

When these principles are applied to the present case, it becomes manifest that the complaint does not disclose a case arising under the Constitution or laws of the United States. The plaintiff's right to an unassailed reputation, the foundation of his cause of action, is a right depending solely upon the law of the state, and is not in any sense conferred by the Federal Constitution or laws. It is true that the cause of action could not have been properly stated without alleging that the defamatory matter was published by the filing of the answer to the complaint with the clerk of the federal court, and hence the complaint discloses that the plaintiff's claim may perhaps be defeated by the application of the rule of law, generally applied, that a statement of fact in a pleading in court, if relevant to the issue, will not support an action of libel even though it is false; but this rule is not based upon any provision found in the Constitution or laws of the United States, but upon the general law of libel which is given effect

in this country whether the pleading complained of is filed in a court of the state or a court of the nation. Anonymous v. Trenkmam (C. C. A.) 48 F.(2d) 571; Young v. Young, 57 App. D. C. 157, 18 F.(2d) 807; McGchee v. Insurance Co. of North America (C. C. A.) 112 F. 853; Union Mut. Life Ins. Co. v. Thomas (C. C. A.) 83 F. 803; Hoar v. Wood, 3 Mctc. (Mass.) 193, 197.

The right of the plaintiff in the state court to recover in this case in no wise depends upon the existence of the federal court. The false statements in writing reflecting upon his character and efficiency would have been actionable even if the tribunal in which they were filed had been based upon an invalid act of Congress. Nor does the plaintiff's right to recover depend upon the construction of any law of the United States within the meaning of that phrase as used in section 24 of the Judicial Code (28 USCA § 41). No enactment of Congress or rule of court is involved, and no question of federal procedure, in the true sense, is raised. The plaintiff alleges that he was injured by a libelous statement contained in the plea in the earlier case which was not privileged because it was not relevant to the issue. Whether the statement was itself libelous, and whether under the circumstances it was privileged, were both questions of substantive law that depend not at all on any federal enactment. The extent or scope of the privilege may be the subject of some doubt, because certain decisions of the Supreme Court are not in complete harmony with other decided cases. Compare White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439, with the cases last cited, and with Cooley on Torts (4th Ed.) § 156; Newell on Slander & Libel (4th Ed.) § 359. The Supreme Court, however, did not enunciate in these decisions a rule of federal law, substantive or procedural, but merely stated and applied the rules of general law as it found them to be. The District Court for the Western District of South Carolina had the undoubted power and duty to pass upon the propriety of the pleading filed in the suit before it, but if it should do so, it would decide a question of state and not federal law, and, in so far as procedure was involved, would follow the state practice under the Conformity Act, 28 USCA § 724. The precise question seems to have been decided in Abbott v. National Bank of Commerce of Tacoma, 175 U. S. 409, 414, 20 S. Ct. 153, 44 L. Ed. 217, where it was held that no question of a federal nature, but only a matter of general law was involved in an action for libel in a state court wherein the plaintiff alleged that the

defendant had published defamatory matter as to the solvency of the plaintiff in a pleading in a prior suit instituted by the defendant in a federal court.

The fact that a pleading in a federal court is the subject-matter of the suit is the persuasive circumstance, upon which the opposing argument is based. But it is too remote from the heart of the controversy to give rise to a federal question in the meaning of the statute as it has been construed. If ever the connection of a federal court with a controversy would give rise to a federal question, it would seem to be when a judgment of that court is the subject of a suit; yet it has been held that the fact that a judgment was recovered in a federal court does not, in a suit upon the judgment, raise a question under the laws of the United States. In Provident Savings Society v. Ford, 114 U. S. 635, 641, 5 S. Ct. 1104, 1107, 29 L. Ed. 261, the court said:

"What is a judgment, but a security of record showing a debt due from one person to another? It is as much a mere security as a treasury note, or a bond of the United States. If A. brings an action against B., trover or otherwise, for the withholding of such securities, it is not therefore a case arising under the laws of the United States, although the whole value of the securities depends upon the fact of their being the obligations of the United States. So, if A. have title to land by patent of the United States and brings an action against B. for trespass or waste, committed by cutting timber, or by mining and carrying away precious ores, or the like, it is not therefore a case arising under the laws of the United States. It is simply the case of an ordinary right of property sought to be enforced. A suit on a judgment is nothing more, unless some question is raised in the case (as might be raised in any of the cases specified) distinctly involving the laws of the United States."

Compare Kansas City Southern Ry. v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579.

Even if it should be supposed that the defense in this case involves a federal question because it relates to the right and privilege of a defendant in a federal court freely to plead the facts favorable to his contention, the right of removal would not arise; for in strict obedience to the new policy announced in the Act of 1887–88, the Supreme Court has held in many cases that a suit may not be removed from a state to a federal court under section 28 of the Judicial Code, 28 USCA § 71, because the defendant bases his defense on rights given him by the Constitution or

laws of the United States. Similarly, it is well established that a case does not arise under the Constitution or laws of the United States within the meaning of section 24 (1) of the Judicial Code, 28 USCA § 41 (1), which fixes the original jurisdiction of the United States courts, merely because the defense may involve a federal question. These cases are particularly significant here for they demonstrate that the Supreme Court has adhered strictly to the mandate of Congress and has not been moved by the persuasive consideration that federal questions ought to be decided, even in the first instance, by federal rather than state courts, no matter how these questions arise.

Thus it was held in one of the cases discussed in the leading decision in Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 S. Ct. 654, 38 L. Ed. 511, that a suit in equity, brought by the state of Tennessee in one of its own courts against a state bank to recover taxes alleged to be due under the general tax act of the state, could not be removed to a federal court although the petition for removal showed that the bank was resisting the claim by virtue of an exemption in its state charter on account of which it contended that as to it, the general tax act was a violation of the provision of the Federal Constitution which forbids the state to pass any law impairing the obligations of a contract; and in another of said cases it was held that the federal court did not have original jurisdiction, although the bill filed therein by the state against the bank disclosed in like manner that the bank was relying on the defense that the state law violated the Federal Constitution. In Gableman v. Peoria, etc., R. Co., 179 U. S. 335, 21 S. Ct. 171, 45 L. Ed. 220, it was held that a receiver of a railroad corporation, appointed by a federal court, could not remove to the federal court an action brought against him as such receiver for personal injuries caused by the negligence of his agents in the operation of the train. It was pointed out that the receiver was appointed under the general equity powers of courts of chancery, and not under any provision of the Constitution or laws of the United States; that his liability depended on the general law and his defense did not rest under any act of Congress and that therefore it could not be said that the action arose under the Constitution or laws of the United States. It has since been held that a suit against a receiver appointed by a court created by law of Congress is removable under section 28 of the Judicial Code (28 USCA § 71), but this is because of the amendment of section 33 of the Judicial Code, 28 USCA § 76, which now provides for the removal of any civil or criminal suit commenced in any court of the state against any officer of the courts of the United States for or on account of any act done in the performance of his duties as such officer. Barnette v. Wells Fargo Nevada Nat'l Bank, 270 U. S. 438, 46 S. Ct. 326, 70 L. Ed. 669.

American Well Works Co. v. Layne & Bowler Co., 241 U. S. 257, 36 S. Ct. 585, 60 L. Ed. 987, was a suit for damages for libel and slander of plaintiff's title to the product it manufactured embraced in the statement that it infringed defendant's patent and that defendant would sue both buyer and seller if the product were used. In holding the case improperly removed to the federal court, Mr. Justice Holmes said: (page 260 of 241 U. S., 36 S. Ct. 585, 586, 60 L. Ed. 987)

"What makes the defendants' act a wrong is its manifest tendency to injure the plaintiff's business; and the wrong is the same whatever the means by which it is accomplished. But whether it is a wrong or not depends upon the law of the state where the act is done, not upon the patent law, and therefore the suit arises under the law of the state. A suit arises under the law that creates the cause of action. The fact that the justification may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract. * * * The state is master of the whole matter, and if it saw fit to do away with actions of this type altogether, no one, we imagine, would suppose that they still could be maintained under the patent laws of the United States."

See, also, Arkansas v. Kansas & Texas Coal Co., 183 U. S. 185, 22 S. Ct. 47, 46 L. Ed. 144; In re Winn, 213 U. S. 458, 29 S. Ct. 515, 53 L. Ed. 873; Venner v. New York Central R. Co. (C. C. A.) 293 F. 373.

We have been referred to the decisions which hold that a federal question is involved in suits against federal corporations which get their existence and derive all their powers, functions, and duties from the federal statutes; Texas & Pacific R. Co. v. Kirk, 115 U. S. 2, 10, 5 S. Ct. 1113, 29 L. Ed. 319; Texas & Pacific R. Co. v. Cox, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; Federal Intermediate Credit Bank v. Mitchell, 277 U. S. 213, 48 S. Ct. 449, 72 L. Ed. 854; and in suits to enforce the rights of an obligee under a bond taken by a federal court in conformity with a federal statute; Howard v. United States, 184 U. S. 676, 681, 22 S. Ct. 543, 46 L. Ed.

754; Leslie v. Brown (C. C. A.) 90 F. 171; American Surety Co. v. Shultz (C. C. A.) 223 F. 280; and in suits for wrongful acts done in the performance of duty by federal officials holding positions created by acts of Congress; Bock v. Perkins, 139 U. S. 628, 11 S. Ct. 677, 35 L. Ed. 314, a case arising before the Act of 1887–8; First National Bank of Canton, Pa. v. Williams, 252 U. S. 504, 40 S. Ct. 372, 64 L. Ed. 690; Eighmy v. Poucher (C. C.) 83 F. 855; but it is obvious that in all these cases, the relation of the plaintiff's claim to a federal statute is much more intimate and direct than in the case at bar. We are not persuaded, as seems to have been held in Rury v. Gandy (D. C.) 12 F.(2d) 620, that a District Court of the United States has original jurisdiction of a suit merely because the acts of the defendant complained of took place in a proceeding in a court of the United States. If the plaintiff's right of action does not really and substantially involve a controversy respecting the validity or construction of an act of Congress, but depends upon the general or state law, a federal question does not arise.

In short, the federal statutes contemplate that a suit shall be brought in or removed to a district court in the first instance only when "the very foundation and support thereof" is a law of the United States, Tennessee v. Bank of Commerce, 152 U. S. 454, 462, 14 S. Ct. 654, 657, 38 L. Ed. 511, and that where a federal question is involved only by way of defense to a cause of action arising under state law, whether pleaded by the defendant or arising as a matter of law upon the statement of the plaintiff's case, that question must be passed upon in the first instance by the state courts. These decisions, however, in most cases are not final when federal questions are involved, for broad powers of review, either by writ of error, or certiorari, are conferred upon the Supreme Court of the United States by section 237 of the Judicial Code, 28 USCA § 344, when the rights of litigants resting upon federal enactments are denied by state tribunals.

The case was not removable to the federal court by the Standard Oil Company because of the existence of a separable controversy between it and the plaintiff. J. C. King, who like the plaintiff was a citizen of South Carolina, was joined as a defendant with the corporation. The declaration charged, as we have seen, that the company and King, its branch manager, jointly and concurrently composed and filed an answer to the original suit as a public record in the District Court in the Western District of South Carolina, and that King verified the answer by making oath to the truth of the matters therein contained. The appellant contends that since King was not a party defendant to the original suit, it follows that he did not join in filing the answer. The allegations of the complaint are to the contrary. They show that the composition and filing of the answer was done jointly, and it is clear that such a statement is not inconsistent with the fact that King was not a party to the suit, for it was quite possible for him, as the representative of the company on the ground, to prepare and verify the answer and co-operate with the company in the filing of it. The rule is established that when the plaintiff's cause of action is joint and several, or where it arises out of concurrent negligence of the defendants, the plaintiff has the option to sue the defendants individually, or to join them in one action; and if he pursues the latter course, no one of the defendants can treat the suit as it concerns him as several, for the purpose of a removal to the federal court. Slate v. Hutcherson (C. C. A.) 15 F.(2d) 551; Hay v. May Department Stores Co., 271 U. S. 318, 46 S. Ct. 498, 70 L. Ed. 965; Sanders v. Atlantic Coast Line R. Co. (D. C.) 33 F.(2d) 1010.

The judgment of the District Court must therefore be reversed and the case remanded to the District Court with directions to remand it to the state court from which it was removed.

Reversed and remanded.

PARKER, Circuit Judge (dissenting).

I cannot give my assent to the proposition that a federal court is powerless to grant relief to one who has been injured as the result of another's abuse of the privileges of a suitor of that court. The power to administer justice as a court carries with it, as a necessary incident, the power to afford adequate redress for the abuse of the process or procedure of the court; and it is manifest that adequate redress involves the power to award money damages as well as to punish for contempt. Hughes Federal Practice, vol. 1, p. 449, § 580. An action for filing a libelous pleading is one growing out of the abuse of the procedure of the court; and the right to recover in such action involves necessarily the rules of practice of the court, whether embodied in formal written rules or in the court's decisions. I think, therefore, that such action must be held to be one arising under the laws of the United States within the mean-

ing of the jurisdictional statute; that it may be instituted originally in the federal courts; and that, if instituted in a state court, it is removable into the federal courts under the statutes permitting the removal of causes.

In reaching this conclusion two questions must be considered: (1) Whether an action for damages on account of a libelous statement contained in a pleading filed in a federal court is an action arising under the Constitution or laws of the United States, and (2) whether the fact that the libelous statement was contained in the pleading is a part of the cause of action asserted or whether it is merely a matter of defense upon which the defendant may rely. I shall consider these questions separately.

On the first question, it must be remembered that a case is said to arise under the Constitution and laws of the United States, not only where demand is made for something conferred by them, but also wherever it appears that the correct decision of the case depends on the construction of a law of the United States or that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the law or sustained by the opposite construction. Cohens v. Virginia, 6 Wheat. 264, 379, 5 L. Ed. 257; Osborn v. United States Bank, 9 Wheat. 738, 821, 6 L. Ed. 204; Little York Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 201, 24 L. Ed. 656; Starin v. New York, 115 U. S. 248, 257, 6 S. Ct. 28, 29 L. Ed. 388; Patton v. Brady, 184 U. S. 608, 611, 22 S. Ct. 493, 46 L. Ed. 713; Germania Ins. Co. v. Wisconsin, 119 U. S. 473, 476, 7 S. Ct. 260, 30 L. Ed. 461; Ray v. Poulnot (D. C.) 46 F.(2d) 677. And it must be remembered also that, if the right asserted by plaintiff is dependent upon the construction placed upon a law of the United States, it does not defeat the jurisdiction that plaintiff's right may depend also upon application to the case of principles of the common law. Southern Ry. Co. v. Prescott, 240 U. S. 632, 640, 36 S. Ct. 469, 60 L. Ed. 836; Bellaire, Benwood & Wheeling Ferry Co. v. Interstate Bridge Co. (C. C. A. 4th) 40 F.(2d) 323, 326. The rule as to this was thus stated by Chief Justice Marshall in Osborn v. United States Bank, supra:

"We ask, then, if it can be sufficient to exclude this jurisdiction, that the case involves questions depending on general principles? A cause may depend on several questions of fact and law. Some of these may depend on the construction of a law of the United States; others on principles unconnected with that law. If it be a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law of the United States, and sustained by the opposite construction, provided the facts necessary to support the action be made out, then all the other questions must be decided as incidental to this, which gives that jurisdiction. Those other questions cannot arrest the proceedings. Under this construction, the judicial power of the Union extends, effectively and beneficially, to that most important class of cases, which depend on the character of the cause. On the opposite construction, the judicial power never can be extended to a whole case, as expressed by the constitution, but to those parts of cases only which present the particular question involving the construction of the constitution or the law. We say, it never can be extended to the whole case, because, if the circumstance that other points are involved in it, shall disable congress from authorizing the courts of the Union to take jurisdiction of the original cause, it equally disables congress from authorizing those courts to take jurisdiction of the whole cause, on an appeal, and thus will be restricted to a single question in that cause; and words obviously intended to secure to those who claim rights under the constitution, laws or treaties of the United States, a trial in the federal courts, will be restricted to the insecure remedy of an appeal, upon an insulated point, after it has received that shape which may be given to it by another tribunal, into which he is forced against his will. We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it."

The inquiry on the first question, then, narrows itself to this: Does the right to recover damages for the filing of a libelous pleading in the federal court depend upon any law of the United States? Will the right upon which the recovery depends be defeated by one construction of the law of the United States or sustained by another? I think that this question must be answered in the affirmative. There is, of course, no federal statute giving a right of recovery for libel; but the rights and liabilities of litigants with respect to filing pleadings in the federal court are determined by the law of the United States and not of the states, and that law must be looked to for the purpose of determining whether a pleading filed in such court is permitted by

the rules of practice there prevailing, and, if not, whether the party who filed it may be called to answer in damages for so doing.

The suggestion of the majority, that the right of plaintiff to recover in no wise depends upon the existence of the federal court but that the false statements would have been actionable if the court had not been validly created, is beside the point. As a matter of fact, the statements relied on are alleged to have been made in a pleading filed in the federal court; and the right to file that pleading depended upon a federal statute, what might properly be inserted in it depended upon the rules of the federal court, and whether the person filing it might be held accountable in damages depended upon the rights of litigants in the federal courts as determined by those courts in the exercise of powers granted them by the Constitution of the United States. A rule of court has the force and effect of law. Weil v. Neary, 278 U. S. 160, 169, 49 S. Ct. 144, 73 L. Ed. 243; Rio Grande Irrigation & Colonization Co. v. Gildersleeve, 174 U. S. 603, 608, 19 S. Ct. 761, 43 L. Ed. 1103. And it is not necessary that the rules of court be written, for established practice has the same force and effect as a rule. Norwegian Nitrogen Products Co. v. U. S., 288 U. S. 294, 325, 53 S. Ct. 350, 77 L. Ed. 796; Duncan v. U. S., 7 Pet. 435, 451, 8 L. Ed. 739.

Whether a person may be held liable in damages for statements contained in pleadings filed in court or whether such statements are absolutely privileged is a matter as to which there has been a conflict in the decisions. The English courts hold to the rule of absolute privilege, and this rule is followed in a number of the state courts in this country. 36 C. J. 1254, and cases there cited. The federal courts hold to the rule of qualified privilege. White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439; Anonymous v. Trenkman (C. C. A. 2d) 48 F.(2d) 571; Young v. Young, 57 App. D. C. 157, 18 F. (2d) 807. These decisions prescribe the rule of practice and lay down the rule of liability for litigants in the federal courts. The rule thus prescribed is just as binding on the courts as though prescribed by Act of Congress; and it is difficult to see why a cause of action depending upon the application of this rule does not arise under a law of the United States within the meaning of the decisions to which I have referred. It is true, of course, that a case does not arise under a law of the United States because a decision of the United States courts is relied upon by one of the parties. But these decisions which fix the liability for acts done in the course of litigation in the fed-

eral courts are more than mere decisions on the rule of privilege applied in actions for libel. They fix the limits of proper practice in the federal courts and lay down the principles upon which litigants in those courts will be held to liability for abuse of their privileges as litigants. Litigants in the federal courts have a right to rely on the rules so established irrespective of what rules may prevail in the state courts; and a denial to the federal courts of the power to establish such rules would be a denial to them of the inherent power of all courts to control the proceedings before them. Abbott v. National Bank of Commerce of Tacoma, 175 U. S. 409, 20 S. Ct. 153, 44 L. Ed. 217, is in no sense a decision to the contrary. That was a writ of error to review a decision of the Supreme Court of Washington which affirmed a judgment of the lower court dismissing a suit for libel on the ground that an allegedly libelous statement contained in an answer filed in a suit in a federal court was privileged. Before the Supreme Court of the United States it was argued that there was error in the judgment of the state court: (1) Because it deprived plaintiff of property without due process of law in violation of the Fourteenth Amendment; (2) because it held that the federal court had jurisdiction of the cause in which the allegedly libelous pleading was filed; (3) because it held that the matter contained in the pleading was privileged; and (4) because it held that such matter was pertinent and material to the issue in that suit. The language which the majority thinks decisive of the case here was used in disposing of the point raised under the Fourteenth Amendment. It was not held in that case that the question raised as to the jurisdiction of the federal court was not a federal question, but merely that the decision of the state court thereon was not reviewable under the applicable statute. See 175 U. S. at pages 412 and 413, 20 S. Ct. 153, 44 L. Ed. 217.

While the exact question here presented has not been before the courts in any reported case, a number of cases involve questions of very similar character. Thus in Bock v. Perkins, 139 U. S. 628, 11 S. Ct. 677, 35 L. Ed. 314, a marshal of the United States was sued in trespass for seizing property of plaintiff under a writ of attachment directed to him by a federal court. It was held that he was entitled to remove the case into the federal court as a case arising under the laws of the United States. The court said: "A case, therefore, depending upon the inquiry whether a marshal or his deputy has rightfully executed a lawful precept directed to the former from a court of the United States is one arising un-

der the laws of the United States; for, as this court has said, 'cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted.' " While this case dealt with the right of removal as it existed prior to the statute of 1887–88, and may not be in point as to whether the plaintiff's case as distinguished from the defendants' defense arose under the laws of the United States, it is direct authority for the position that a question arises under the laws of the United States when those laws must be looked to for determining the rights of the parties. Whether the federal question in the case at bar arises on the plaintiff's case or is a mere matter of defense is dealt with later in this opinion.

In Howard v. United States, 184 U. S. 676, 22 S. Ct. 543, 546, 46 L. Ed. 754, it was held that a suit could be instituted in a federal court on a bond given by the clerk of that court, on the ground that such suit arose under the laws of the United States. The court, speaking through Mr. Justice Harlan, said: "The suit was directly upon a bond taken by the circuit court in conformity with the statutes of the United States, and the case depends upon the scope and effect of that bond and the meaning of those statutes. It was therefore a suit arising under the laws of the United States, of which the circuit court (concurrently with the courts of the state) was entitled to take original cognizance, even if the parties had been citizens of the same state." Certainly the cause of action on a bond arises out of the contract therein contained just as truly as a cause of action for libel arises out of a libelous statement; and it can be just as truly said that the obligation of the bond exists irrespective of where it is filed as that the liability for libel exists irrespective of where the libelous statement is filed. But, as pointed out by the Supreme Court, the bond was taken pursuant to statute and the rights and liabilities thereunder are to be determined by the federal law; and in the case at bar the pleading was filed pursuant to federal statute, the Conformity Act, and the rights and liabilities of the parties with respect thereto are to be determined by the federal law. It would seem that there is as much reason for holding that a cause of action with respect thereto arises under the laws of the United States in the one case as in the other.

On similar principles it has been held that actions may be removed to the federal courts as arising under the Constitution and laws of the United States, where the cause of action alleged was wrongfully causing a United States marshal to levy execution on plaintiff's chattels [Hurst v. Cobb (C. C.) 61 F. 1], where a United States District Attorney was charged with malicious prosecution for causing the indictment and arrest of plaintiff under a criminal charge [Eighmy v. Poucher (C. C.) 83 F. 855], where a warden of a federal prison was sued by a prisoner for damages on account of personal injury resulting from negligence [Steele v. Halligan (D. C.) 229 F. 1011], and where defendants were sued for malicious prosecution on account of alleged false testimony given before a grand jury and on trial in court [Rury v. Gandy (D. C.) 12 F.(2d) 620, 621]. In Young & Jones v. Hiawatha Gin & Mfg. Co. (D. C.) 17 F.(2d) 193, a suit was held removable as arising under the Constitution and laws of the United States, where it was brought to recover the value of cotton which had been burned in a warehouse licensed under the United States Warehouse Act (see 7 USCA § 241 et seq.).

In Rury v. Gandy, supra, Judge Cushman, in holding that the federal courts had jurisdiction of a suit for malicious prosecution arising out of a prosecution in the federal courts, said:

"Fundamentally, there are the same reasons for maintaining the jurisdiction in the present case that exist in an ancillary cause or in a case of contempt of court, which latter is in its nature an ancillary proceeding. That with which the defendants are here charged is, in its nature, a contempt of court; and the court should and does have jurisdiction, not only that it may give a remedy for the wrong, in the accomplishment of which, it is alleged, the court's power has been used —power given and defined by national law— but the court has jurisdiction because of that public policy under which every government must be vigilant to see that those who, like the defendants, have been witnesses for the government in a criminal cause, are not wrongfully made to suffer because of that fact. Whether as complainants and witnesses before a grand jury of a court of the United States defendants violated the laws of the United States and perjured themselves, and thereby worked their malice upon the plaintiff, presents a federal question."

The reasoning of Judge Cushman in this case seems to me to be unanswerable, and it applies with equal force to the case at bar; for there can be no difference in principle in holding a witness liable for damages for instituting a prosecution and giving testimony

in a federal court and in holding a party liable for damages for filing in the federal court a pleading containing libelous and irrelevant statements. In both cases what the defendants are charged with is in its nature a contempt of court, and the court should have jurisdiction, not only that it may give an adequate remedy for the wrong in the perpetration of which the procedure of the court has been used, but also that it may protect litigants who have invoked its jurisdiction and who otherwise may be made to suffer because of that fact.

The proposition that a libelous statement in a pleading in a federal court is to be dealt with just as though it had been made anywhere else, and that no question with respect thereto arises under the federal law because of its incorporation in a pleading filed pursuant to the practice of the federal courts, would necessarily lead to results entirely out of harmony with the whole theory of federal judicial power. Libel is a crime at common law and under the laws of most, if not all, of the states. In South Carolina it is made criminal by section (326)17 of the Criminal Code of 1922. If the proposition above stated be accepted as the law, it follows that the state may prosecute in its courts a litigant in a federal court for statements contained in a pleading filed in accordance with the rules of that court, and thus a pleading which the federal court might hold proper could serve as the basis of punishment in the state courts. Again, the state rule with respect to the privilege attaching to pleadings might vary from the federal rule, as it does in some of the states, and a litigant might find himself powerless to obtain redress for a wrong done him when judged by the federal rule, or might be held to liability for an act which the federal rule might justify as proper. Again, responsibility for libel under state laws is controlled by the Legislature; and the federal court might find itself powerless to afford adequate redress to persons aggrieved by wrongful acts done in the course of proceedings before it, or to afford adequate protection to litigants complying with its rules, because of the libel laws of the state. It will not do to say that the remedy in such cases is found in review of the state courts by the Supreme Court of the United States under writ of certiorari; for, if no federal question is presented by reason of the fact that the alleged libelous pleading was filed in the federal court, then, of course, the Supreme Court has no right of review by certiorari or otherwise.

I come then to the second question, viz., whether the fact that the libelous statement was contained in a pleading filed in the federal court is a part of the cause of action asserted or whether it is a mere matter of defense upon which the defendant may rely. This question is of importance because a case is held to arise under the Constitution and laws of the United States only where plaintiff's statement of his own cause of action shows that it does so arise, and that it is not sufficient that the defendant may find in the Constitution or laws of the United States some ground of defense. In re Winn, 213 U. S. 458, 29 S. Ct. 515, 53 L. Ed. 873; Venner v. New York Central R. Co. (C. C. A. 6th) 293 F. 373. It seems to me to be clear, however, that the federal question here is inherent in plaintiff's cause of action. There can be no libel without a publication; and the only publication alleged is the filing of the pleading containing the alleged libel in a suit in a federal court. Plaintiff, therefore, has no cause of action except such as is dependent upon the procedure, the rules, and the practice of the federal courts. To use the language of Chief Justice Marshall in Osborn v. Bank of United States, the federal question forms an "ingredient" of the cause.

It is true that in the law of libel and slander, privilege is ordinarily a defense to be established by the defendant; but this is not the case where the publication relied upon is in a court proceeding. In such case the burden rests upon the plaintiff to allege and show that the alleged libelous statement was not privileged under the rules and practice of the court. 37 C. J. 33; Miller v. Gust, 71 Wash. 139, 127 P. 845, 846; Hartung v. Shaw, 130 Mich. 177, 89 N. W. 701, 702; Mower v. Watson, 11 Vt. 536, 34 Am. Dec. 704; Liles v. Gaster, 42 Ohio St. 631; Cooper v. Phipps, 24 Or. 357, 33 P. 985, 22 L. R. A. 836; Calkins v. Sumner, 13 Wis. 193, 80 Am. Dec. 738. The reason for this distinction is well stated by the Wisconsin court in the case last cited as follows:

"Although where the words used are actionable in themselves, the law ordinarily implies malice from the act of speaking or writing them, and distinct proof of malice is not required; yet when they are written or spoken by parties, counsel, witnesses, jurors or judges in the course of a judicial proceeding, they are prima facie privileged. The circumstances under which they are thus spoken or written exclude the legal notion of malice, and it lies with the party complaining to establish that they were not pertinent or material to the subject in controversy, and that the speaker or writer was animated by ill-will and hatred. This principle is vindicated by the adjudications upon the subject, and is consistent with reason. For it would be ex-

tremely inconsistent, and I might say absurd, for the law to presume that judicial proceedings of any kind are resorted to for the mere purpose of enabling parties to indulge their malice and utter slanders, and not in good faith, to attain some legitimate end, or to perform some lawful act or duty, which is useful and beneficial to themselves or others. On the contrary, the presumption is very strong, that persons so situated are using legal proceedings for proper purposes, and that what is said or done proceeds from sufficient cause and right motives; and when that which thus transpires may constitute the basis of an action at all, it is only upon the ground that there is proof of express malice, and that the person complained of has availed himself of his position to gratify his malevolence, by defamatory expressions against parties or others, which have no connection with or bearing upon the subject under investigation."

The Supreme Court of Washington, in Miller v. Gust, supra, in upholding a demurrer to a complaint alleging libel in a pleading filed in court, said:

"The complaint before us does not charge that the allegations complained of, as found either in the offending complaint or in the affidavit, were not relevant and pertinent to the cause or subject there under inquiry. The very nature of that action invites the presumption that they were relevant and pertinent. Their relevancy and pertinency in that case constitute the one dominant, issuable fact in this case, not the truth, falsity, or maliciousness of the words."

And in Hartung v. Shaw, supra, the Supreme Court of Michigan, in sustaining a judgment on the ground that a declaration alleging libel in a pleading did not state a cause of action, said:

"Where a party shows in his declaration a publication presumptively privileged, it is his duty, in order to recover, to prove that the words spoken were not pertinent or relevant, and that they were not spoken bona fide. Mower v. Watson, 11 Vt. 536, 34 Am. Dec. 704; Henry v. Moberly, 6 Ind. App. 490, 33 N. E. 981; McNabb v. Neal, 88 Ill. App. 571; Johnson v. Brown, 13 W. Va. 71. If it be necessary to prove this, it is equally necessary to allege it."

And Corpus Juris, vol. 37, p. 33, thus states the rule:

"Where the action is based on defamatory matter published in due course of a judicial proceeding, if the relevancy of the matter and its pertinency to the subject of inquiry are necessary in order to confer the privilege, its irrelevancy and impertinency must be alleged, and the facts showing the irrelevancy alleged should be set up in the declaration."

To conclude, it seems clear to me that the allegation that the alleged libelous pleading was filed in the federal court was a necessary allegation of plaintiff's cause of action, and not a mere matter of defense; that whether such allegation stated a cause of action depended upon the statutes and rules of practice regulating procedure in the federal courts and the rule of those courts as to liability for libelous statements contained in pleadings; that a federal question was raised for this reason, as well as because the action was an attempt to obtain redress for alleged abuse of the privileges of a litigant in the federal courts; and that as the right of plaintiff to relief depended upon the determination of this federal question, the action was properly removed into the court below. As was well said by the learned judge of that court:

"The decision in the case will involve the question of the jurisdiction of a court of the United States; the powers and functions of that court; and the rights, duties, and privileges of a litigant therein. If those questions do not arise out of the laws of the United States, then they do not arise out of any laws. All the powers and functions of a federal court arise from federal statutes and the Constitution of the United States, and likewise all the rights, duties, and privileges of a litigant in that court flow from and are protected by the laws of the United States. The mere fact that questions as to those rights and privileges may depend for their solution upon an application of the common law in no way negatives the proposition that the rights and privileges claimed flow from and arise out of the laws and Constitution of the United States." 60 F.(2d) 162, 163.

If the case here is not removable to the federal courts, this must be so because it might not have been brought in the federal courts in the first instance; and to deny the federal courts jurisdiction in such a case is to deny them power to afford redress to one who has suffered through abuse of their process or procedure. It cannot be that they are lacking in this fundamental power of all courts. Although the jurisdiction of the federal courts is limited, their power within the limits of that jurisdiction is plenary; and I cannot think that they are without power either to afford relief to those who have suffered through abuse of their process or procedure or to afford protection to suitors who are alleged to have been guilty of such abuse when called in question therefor elsewhere.

The idea that abuses of the process of the

federal courts, or wrongful acts done in the course of judicial proceedings before them, can be redressed only by the state courts, would strip the federal courts of a power essential to the maintenance of their power and dignity as courts. To visualize what this would mean, as a practical matter, one has only to remember the varying state enactments on the subject of libel and the varying procedures followed by the different state courts for the redress of grievances. Litigants in the federal courts might well hesitate in the assertion of their rights, if faced with the possibility of being called in question in other courts for acts done there and of having their liability therefor determined under the rules and procedure of such other courts. I do not think that either principle or authority supports the rule which would deny to the federal courts a power so necessary to the proper discharge of their duties and the protection of litigants before them.